Dutton v. Warschauer.

creditor attempting to enforce a vested lien upon specific property. Under no circumstances can a creditor with a specific lien be delayed in his remedy upon it, unless a case is made out against him within the doctrines applicable to the "marshaling of assets." (1 Sto. Eq. chap. 13.)

DUTTON v. WARSCHAUER.

The action of ejectment must be brought against the actual occupant of the premises, if there be one. If such occupant be a tenant of another, the landlord may appear and defend in his name or be substituted in his place.

The appearance or substitution of the landlord should be entered of record, and only allowed upon notice to the parties. After it is once properly made, the tenant cannot interfere with any subsequent proceedings to the prejudice of the landlord.

Where, without any order of record, the landlord, at the request of the tenant, appeared in fact and conducted the defense to judgment in the lower Court: *Held*, that it was too late to object in the Appellate Court to the want of the order; and that the landlord was entitled to the control of the appeal.

The doctrine respecting mortgages which prevails in this State is, that a mortgage is a mere security operating upon the property as a lien or incumbrance only, and is not a conveyance vesting in the mortgagee any estate in the land either before or after condition broken.

This doctrine was established, not merely from a consideration of the provisions of the Statute of 1851, but also from a consideration of the real object and intention of the parties in executing and receiving instruments of this kind,

and as embodying the principles recognized generally in the Courts of other States.

The provisions of the statute, however, led the Court to go beyond the decisions in other States adopting the equitable doctrine as to mortgages, and to carry that doctrine to its legitimate and logical result by regarding the mortgage as a security under all circumstances, both at law and in equity.

The character of the mortgage, as a mere security, is not changed by default in the payment of the debt secured, and payment after default operates as an extinguishment of the lien equally as payment at the maturity of the debt.

The interest of the mortgagee is not enlarged or affected by the fact that he is in possession under the mortgage.

A mortgagee after condition broken, whether in or out of possession, cannot convey the legal title, and his deed, as mortgagee alone, without a transfer of the debt, passes nothing.

When possession is taken by the mortgagee, after condition broken, by consent of the mortgagor, it will be presumed, in the absence of clear proof to the contrary, to be with the understanding that the mortgagee is to receive the rents and profits, and apply them to the debt secured; and, unless a limitation to the period of possession is fixed at the time, it will be considered as extending until the satisfaction of the debt.

The temporary possessory right thus acquired by the mortgagee may be transferred, and the transferree will be substituted to his position, and be subjected to the same liabilities. This, however, will not be effected by a deed, which does not purport to convey any possessory rights of the grantor, or his interest generally, but only such interest as he could convey as mortgagee, or by virtue of an express power from the mortgagor.

A power to sell and convey land not under seal, and therefore insufficient to authorize the execution of a conveyance of the fee, is nevertheless sufficient authority for the execution of a contract of sale ; and a deed made by the donee reciting the sale, and purporting, in pursuance of the power, to convey the fee, is a sufficient "note or memorandum" of such contract, and though inoperative as a conveyance is good as an agreement to convey.

Where a purchaser, under a conveyance executed by an attorney having a power not under seal, pays the purchase money, and enters into possession, a Court of Equity will protect him, and parties claiming under him, against subsequent purchasers with notice from the grantor of the power.

Open, notorious, and exclusive possession of real estate is sufficient to put a purchaser upon inquiry as to the interest, legal or equitable, held by the possessor.

Such possession by a tenant is sufficient to put the purchaser upon inquiry as to the landlord's title.

*Smith* v. *Dall* (13 Cal. 510) overruled on this point.

APPEAL from the Fourth Judicial District.

The defendant was, at the time of the commencement of the action, the tenant of Mrs. Wheelock. He notified her of the

action, and she appeared by counsel in the lower Court, and conducted the defense, but without being substituted as defendant, or becoming a party to the record.    The judgment being for plaintiff, an appeal was taken at the instance of Mrs. Wheelock, but in the name of Warschauer, the defendant.    Before the hearing, Warschauer filed a release of all errors, on which respondent moved to dismiss the appeal.    The motion was argued and submitted in connection with the other points in the case.

The following are copies of the mortgage of April 13th, 1850, executed by Finley, Johnson & Austin to Meacham, and of the deed of July 5th, 1850, executed by Meacham to Joseph W. Finley, mentioned in the opinion of the Court:

[COPY OF THE MORTGAGE.]

" This Indenture, made this thirteenth day of April, in the year of our Lord one thousand eight hundred and fifty, between John M. Finley,· Charles H. Johnson, and Jos. W. Austin, of the county of San Francisco, in the State of California, of the first part, and R. Meacham, of the county and State aforesaid, of the second part: Whereas, the said parties of the first part, by their bond or obligation, duly executed, bearing date on the thirteenth day of April, in the year of our Lord one thousand eight hundred and fifty, stand bound unto the said party of the second part, his executors, administrators, or assigns, in the sum of twenty-four thousand dollars, current money, with a condition thereunder written for the payment of the sum of twelve thousand dollars, current money, on or before the twelfth day of June next ensuing, as by the said bond and condition may more fully appear.

" Now this Indenture witnesseth, that the said parties of the first part, in consideration of the said debt or sum of twelve thousand dollars owing to the said party of the second part as aforesaid, and for the better securing the payment thereof to the said party of the second part, his executors, administrators, or assigns, according to the condition of the said bond ; and also, in consideration of the further sum of five dollars, current money, to them, the said parties of the first part, by the said party of the second part, in hand well and truly paid, at and before the sealing and delivery of these

presents, the receipt whereof is hereby acknowledged by the said parties of the first part, have granted, bargained, and sold, released and confirmed, and by these presents do grant, bargain, and sell, release and confirm unto the said party of the second part, his heirs and assigns, all that lot or portion of land lying and being in the city of San Francisco, county and State aforesaid, being part of lot known on the plat or plan of the said city as number seventy-seven, (77) which said part or portion herein conveyed is bounded as follows : Commencing on the south-west corner of lot number seventy-seven, and extending northwardly thirty feet in front on Stockton Street, and running back in depth twenty-five varas at right angles to the line of said street, having the same frontage and rear.

" To have and to hold the said lot or piece or portion of land, and every part and parcel thereof, with the buildings and appurtenances thereunto belonging to the said R. Meacham, his heirs and assigns, forever, to their own use and behoof.

" *Provided*, always, and it is the true intent and meaning of these presents, and of the said parties hereunto, that the said parties of the first part, their heirs, executors, or administrators, do and shall well and truly pay, or cause to be paid, unto the said party of the second part, his executors, administrators, or assigns, the said full sum of twelve thousand dollars, current money, on or before the twelfth day of June, in the year of our Lord one thousand eight hundred and fifty, without any deduction or abatement whatever, then and from thenceforth these presents, and every matter and thing therein contained, shall cease and be utterly null and void, anything therein to the contrary thereof in any wise notwithstanding.

" In witness whereof, the said parties of the first part have hereunto set their hands and affixed their seals the day and year first above written.

"JOHN M. FINLEY,    [SEAL.]
" C. H. JOHNSON,    [SEAL.]
" JOS. W. AUSTIN.    [SEAL.]

" Signed, sealed, and delivered in the presence of
" GEO. GIBSON,
" W. O. HAMERSTINE."

This mortgage was acknowledged and recorded on the thirteenth of April, 1850.

[COPY OF THE DEED.]

"This indenture, made this fifth day of July, 1850, between Randolph Meacham, of the city of San Francisco, of the one part, and Joseph W. Finley, of the same city, of the other part: Whereas, John M. Finley, Charles H. Johnson, and Joseph W. Austin, by a certain indenture dated the thirteenth day of May, 1850, did grant, bargain, sell, release, and confirm unto the said Randolph Meacham the premises hereinafter described and conveyed for securing the payment of the sum of twelve thousand dollars as therein particularly mentioned; and whereas the said principal sum being in arrear and unpaid, the said Randolph Meacham, under and by virtue of the said indenture, and of a certain authority in writing, signed by the said John M. Finley, Charles H. Johnson, and Joseph W. Austin, and dated the twenty-sixth day of June last, advertised the said described premises for sale by public auction on the second day of July instant, at which sale the said Joseph W. Finley, being the highest bidder, became the purchaser thereof, at the price of seven thousand, eight hundred dollars.

"And this indenture witnesseth, that in consideration of the said sum of seven thousand, eight hundred dollars, to the said Randolph Meacham, paid by the said Joseph W. Finley, at or before the sealing and delivery hereof, the receipt whereof, and that the same is in part payment of the said principal sum of twelve thousand dollars, he, the said R. Meacham doth hereby acknowledge, he, the said R. Meacham, *as such mortgagee as aforesaid, and under and by virtue of the said indenture and authority in writing hereinbefore recited,* hath granted, bargained, sold, released, and conveyed, and by these presents doth grant, bargain, sell, release, and convey unto the said Joseph W. Finley, his heirs, executors, administrators and assigns, all that lot or portion of land lying and being in the said city of San Francisco, being part of lot known on the plot or plan of the said city as number seventy-seven, which said part or portion hereby conveyed is bounded as follows:

" Commencing at the south-west corner of said lot number seventy-seven, and extending northwardly thirty feet in front of Stockton Street, and running back in depth twenty-five varas, at right angles to the line of said street, having the same frontage and rear.

"To have and to hold the same, together with the buildings and appurtenances standing and being thereon or belonging thereto, unto the said Joseph W. Finley, his heirs, executors, administrators, and assigns, as fully and absolutely to all intents and purposes as the said R. Meacham, *under and by virtue of the said indenture and authority can and may convey and assure the same, but not further or otherwise;* and the said R. Meacham doth hereby for himself, his heirs, executors, and administrators, covenant and declare that he hath not in any manner charged, incumbered or prejudicially affected the said premises hereinbefore described in title, estate, or otherwise howsoever.

"In witness whereof, the said R. Meacham doth hereto set his hand and seal, the day and year first above written.

"R. MEACHAM.    [SEAL.]

"Signed, sealed and delivered by the said R. Meacham in the presence of

H. G. GORELIN."

This deed was acknowledged and recorded on the eighth of July, 1850.

*O. L. Shafter* and *S. Heydenfeldt,* for Appellant.

The defendant is in possession under the title of Mrs. Joanna Wheelock and she has by confession all the title that passed to Joseph W. Finley by Meacham's deed to him, executed July 6th, 1850.

In the strictly legal aspects of the case, as contra-distinguished from the equitable ones, the principal question is this, what estate passed to Finley by the deed of Meacham, above mentioned?

I.   Finley by that deed became the owner of the demanded premises in fee simple absolute, both as against Meacham and as against Finley, Johnson & Austin.   This result will be argued

upon two grounds, each of which is substantially or at least conplexiously distinct from the other.

1st. At the time Meacham executed the deed in question, he was a mortgagee, in possession of the mortgaged premises, after condition broken, and therefore was in a position to convey the legal title to another, in his own name, subject always to the right of the mortgagor to redeem. This point is to be determined by the common law of England, as it stood on the thirteenth of April, 1850. Our present statute upon the subject of mortgage titles was not passed until the twenty-ninth of April, 1851, nine months after the deed to Finley. (Greenl. Cruise, Tit. Mort. ; 1 Hilliard on Morts. 134 ; *Smith* v. *Smith*, 15 N. H. 55.) That this understanding of the rule of the English Common Law is not a mistaken one, see *McMillan* v. *Richards* (9 Cal. 407.)

But it is suggested that Meacham was in possession as tenant of the mortgagors, and that he paid rent as such. The case shows simply that Meacham went into possession after breach of condition, by the consent of one of the mortgagors, and that when he thereafter came to compute the amount of their indebtedness to him in connection with a personal action brought to recover it, he made an abatement on the score of his occupation of the mortgaged premises. This fact consists perfectly with his position of mortgagee in possession; as such he was, on well settled principles, liable to account as bailiff or receiver, and the abatement named was but a mere recognition of the liability.

2d. Meacham was not only a mortgagee in possession after breach of condition, but aside from all question of possession he had a power authorizing him to sell and convey in his own name, and therefore his own deed suffices to pass the title. As to the existence of such power, it is established by the direct testimony of Meacham, and with as much precision as the nature of the case will admit. The power is recited in the deed to Finley, a document nearly contemporaneous, and this recital is notice of its existence to all persons. (*Jackson* v. *Neely*, 10 Johns. 374.)

The long acquiescence of the parties interested to disprove its existence or its completeness, in the face of a continued adverse possession, is an important circumstance to be considered in con-

nection with the other proofs.   (14 Vt. 268; 1 Caines on Error, 18, 21; Mathews' Pres. Ev. 197, *passim*.)

Assuming the existence and completeness of the power, Meacham properly executed the deed to Finley in his own name.   (4 Kent, 124; 1 Caines' Cases on Error, 15; 2 Mason, 249; Story Ag. secs. 150, 164.)

II.   At the worst, Meacham was lawfully in possession of the property by the license of the mortgagors, and his deed to Finley substituted the latter to his position, and so on through the whole descending series to Warschauer inclusive.   As Meacham's possession was no ouster, so Warschauer's possession is not.   There should have been a demand and refusal in advance of suit.   A mere claim of title is no ouster of real property or conversion of personal property; conversion and ouster go upon the same principle, and mere words, whether spoken or written, can. accomplish neither the one nor the other.   It may be true that at common law a conveyance by a mortgagee out of possession may give to his grantee no right of entry, but while the mortgagee is in possession by license of the mortgagor, he is in a position *to communicate his own admitted possessory rights to another.*

But at the time of this conveyance by Meacham, the deed of a mortgagee out of possession was good to pass the legal title; for, by the thirty-fourth section of the Act of April 16th, 1850, entitled "An Act concerning Conveyances," it is provided, that, "Any person claiming title to any real estate may, notwithstanding there may be an adverse possession thereof, sell and convey his interest therein in the same manner and with the same effect as if he was in actual possession thereof."   Meacham, therefore, even if not in possession, had the power to convey whatever interest he held.

But the *prima facie* title of the plaintiff is resisted not merely upon the ground of superior legal right, but upon equitable grounds.

1st. The answer discloses a good, equitable defense as against Finley, Johnson & Austin.   We shall forbear from arguing this question and content ourselves with giving .citations.   (*Salmon* v. *Hoffman*, 2 Cal. 138; *Francis* v. *Crane*, 15 Id. 12.)

2. Plaintiff took his deed from Johnson, with notice in fact; and

Spence & Bowie took their deed from Finley, Johnson & Austin, with like notice.

The adverse possession commenced with J. W. Finley, on the sixth of July, 1850, and has been steadily perpetuated from that day to the present. It has always been actual, visible, and notorious, and never more so than at the time when Spence & Bowie took the firm interest, and when the plaintiff bought of its surviving member, Johnson. (*Hunter* v. *Watson,* 12 Cal. 363 ; *Smith* v. *Dall,* 13 Id. 510.)

By the last case, when the owner is sued he cannot prove notice in fact by the possession of his tenant. It decides nothing but that; but the decision goes upon the principle that any defendant in ejectment having an estate in the land to defend, which estate was not manifested of record at the time when the plaintiff took his deed from the party who previously created the estate in the defendant, may show notice in fact of the existence of the estate by proof of personal possession in its owner at the point of time when the adverse deed was given.

But the case of *Smith* v. *Dall* it is submitted is not law and must be overruled. It is the opinion of only one Judge. The doctrine is derived exclusively from a dictum in 2 Sugden on Vendors, 558, which has no support from any previous authority. Judge Story, while he unnecessarily adopts the doctrine in the case of *Flagg* v. *Mann,* (2 Sum. 555) admits that there is no authority for the position except the great experience and acknowledged ability of the author.

The authorities cited by Judge Story as far as they are reliable do not sustain the principle, and diligent research has failed to find any sanction for it.

On the other hand the opposite doctrine has been held, and is the rule in at least five of the United States where the question has been passed on. The following cases are referred to : *McCorkle* v. *Amarine* (12 Ala. 17, 23) ; *Diehl* v. *Page* (2 Greens. Ch. 143, N. J.) ; *Baldwin* v. *Johnson* (Saxton, N. J. Ch. 441 ; *Pitman* v. *Gates* (5 Gilman, 186) ; *Pritchard* v. *Brown* (4 N. H. 397) ; *Hanley* v. *Morse* (32 Maine, 287) ; *Vezio* v. *Parker* (23 Id. 171). And it never was doubted that possession was notice of

40

the tenant's equity, and therefore the defendant as tenant should be protected.   (*Troup* v. *Hurlburt*, 10 Barb. 354 ; *Taylor* v. *Hibbert*, 2 Vesey, 440 ; *Weem* v. *Neill*, 13 Id. 120.)

*J. D. Bristol*, for Respondent.

I.   The defendant has released all errors, and the appeal should therefore be dismissed.   Under the practice in this State and the decisions of this Court, the tenant in possession is the only proper party defendant, in ejectment.   Mrs. Wheelock, if she had so desired, had the right to have herself substituted on the record as defendant, and could have come in and defended the action in the Court below in her own name, and thus have protected herself against any steps which her tenant might be inclined to take to her prejudice.   But we insist that she cannot now become a party to this record in any way.   If her tenant has done anything wrong in the defense of this action, she has a remedy against him.   Warschauer is the only party defendant and appellant, and being such, has a legal right to release any error that may have been committed ; *non constat* but appellant may have bought the titles of both plaintiff and Mrs. Wheelock since the trial, and does not wish to prosecute his appeal.

II.   Appellant contends that Meacham was a mortgagee in possession after condition broken, and that he entered for breach of condition, and had good right to convey in his own name, and that therefore defendant has the legal title.   We answer that a mortgagee can convey no title.   He has none to convey.   (*McMillan* v. *Richards*, 9 Cal. 365 ; *Johnson* v. *Bronson*, 19 J. R. 326 ; *Godfrey* v. *Caldwell*, 2 Cal. 409.)   This last case was decided before the passage of the Civil Practice Act in 1851.   But appellant says that he had title in equity.   He insists that Finley had paid money to Meacham which went in part satisfaction of the mortgage debt, and that he holds under Finley, and therefore has an equitable title, and that his possession was notice to plaintiff of his title.

No assignment of the debt or mortgage, or any part thereof, took place.   Meacham retains the debt and sues on it.   (See *Peters* v. *Jamestown Bridge Co.*, 5 Cal. 334.)   A deed from the mortgagee does not even convey the mortgage.   (*Ord* v. *McKee*,

5 Cal. 515.) As to the alleged power of attorney from the mortgagors to Meacham to sell and convey, it is sufficient to say that it was not under seal, and therefore could not confer any authority to execute the deed to Finley ; and if the power had been under seal, it would not have authorized a deed in the name of the attorney. (Notes of Hare & Wallace, in 1 Amer. Lead. Cases, 601.)

III.   The plaintiff is a *bona fide* purchaser for value without notice of any equities on the part of the landlord of the defendant. He is therefore entitled to recover, having the legal title.   It is not claimed that the plaintiff had any actual notice, and no constructive notice could arise from the records, as there was no conveyance out of Finley, Johnson & Austin.   Defendant relies upon constructive notice from the possession of the defendant.   Notice must be clearly established to overturn a legal title.   It is not the case of a good deed not recorded, and the possession going with the deed.   There is no pretense that Finley, Johnson & Austin ever made any deed to this property.   It cannot be contended that defendant was in under an equity which could not in its nature be recorded.   The power was an instrument which could have been acknowledged and recorded, and any contract or deed made under it could have been likewise recorded.   This rule of notice of an equity can never apply when the party invoking it has neglected to obtain a proper title, which, as in this case, could have been obtained. In other words, equity will not protect a man who prefers to neglect his own interest.

FIELD, C. J. delivered the opinion of the Court—COPE, J. and NORTON, J. concurring specially.

The action of ejectment must be brought against the actual occupant of the premises, if there be one.   (*Garner* v. *Marshall,* 9 Cal. 268.)   If such occupant be a tenant of another, the landlord may appear and defend in his name, or be substituted in his place. But such appearance or substitution should be entered of record, and only allowed upon notice to the parties.   After it is once properly made, the tenant cannot interfere with any subsequent proceedings to the prejudice of the landlord.   In the present case the defense was made by the landlord at the request of the tenant.

Judgment having passed against the tenant, the landlord took an appeal in his name.   Thereupon the tenant executed a release of errors, and upon it the plaintiff moves for a dismissal of the appeal.

This motion must be denied.   The right of the landlord to conduct the proceedings, after having been once allowed to appear and defend in the tenant's name, extends to the final disposition of the case, and is not limited to the proceedings in the lower Court. (*Kellogg* v. *Forsyth,* 24 How. 186.)   It is true, no order was entered allowing the landlord to appear and defend, but as the defense was in fact conducted by him to judgment at the request of the tenant, it is too late to object in this Court for the want of such order ; if it were otherwise we would allow the order to be entered *nunc pro tunc.*

The plaintiff and the landlord of the defendant both deraign their title from a common source—from Finley, Johnson & Austin. These parties owned the premises in fee on the thirteenth of April, 1850.   On that day they executed a mortgage thereon to one Meacham, to secure their bond to him for $12,000, payable on the twelfth of June following.   The mortgagors made default in the payment of the bond, and by permission of one of them Meacham went into possession of the premises.   Whilst he was in possession the mortgagors executed to him a power in terms authorizing him to sell and convey the premises in his own name.   In pursuance of the terms of this power, he sold and conveyed the premises to one Finley, for the consideration of $7,800.   The deed bears date July 6th, 1850, and recites the power.   Through this deed the landlord of the defendant traces his title, and the principal question for determination relates to the sufficiency of the title thus acquired to resist a recovery of the plaintiff, claiming through subsequent deeds, taken with only such notice of the landlord's interest as could arise from the possession of his tenant.

The defendant takes two positions : first, that the legal title to the premises passed by the deed ; and second, if this be not sustained, then that an equitable title was created, which, having been followed by possession, is sufficient to defeat the action.

The transfer of the legal title is asserted on two grounds : one, that Meacham, as mortgagee in possession after condition broken,

was clothed with the fee; and the other, that he was invested with authority to convey the whole estate by the special power from the mortgagors.

The first ground proceeds upon the common law doctrine of mortgages, which does not prevail in this State. At common law, a mortgage is considered as a conveyance of a conditional estate, which becomes absolute upon breach of the condition. But "in this State," as we said in *Goodenow* v. *Ewer*, (16 Cal. 467) "a mortgage is not regarded as a conveyance vesting in the mortgagee any estate in the land, either before or after condition broken. It is regarded, as in fact it is intended by the parties, as a mere security, operating upon the property as a lien or incumbrance only. Here, the equitable doctrine is carried to its legitimate result. Between the view thus taken and the common law doctrine—that the mortgage is a conveyance of a conditional estate— there is no consistent intermediate ground. In those States where the mortgage is sometimes treated as a conveyance, and at other times as a mere security, there is no uniformity of decision. The cases there exhibit a fluctuation of opinion between equitable and common law views of the subject, and a hesitation by the Courts to carry either view to its legal consequences. In *McMillan* v. *Richards* (9 Cal. 365) we had occasion to consider the subject at great length, and to observe upon the diversity existing in the adjudged cases. We there asserted, what had previously been held in repeated instances, the equitable doctrine as the true doctrine respecting mortgages, and have ever since applied it under all circumstances. (See *Nagle* v. *Macy*, 9 Cal. 426 ; *Haffley* v. *Maier*, 13 Id. 13 ; *Koch* v. *Briggs*, 14 Id. 256 ; *Clark* v. *Baker*, Id. 612 ; *Johnson* v. *Sherman*, 15 Id.) When, therefore, a mortgage is here executed, the estate remains in the mortgagor, and a mere lien or incumbrance upon the premises is created."

The counsel of the defendant do not controvert the doctrine thus stated as applicable to mortgages executed since the Statute of 1851, but appear to consider that it was not intended to embrace mortgages previously executed. In this view they are only partially correct. The doctrine was established not merely from a

consideration of the provisions of the statute, but also from a consideration of the real object and intention of the parties in executing and receiving instruments of this kind.   In truth, mortgages had long before lost, for nearly all purposes, their common law character as conveyances, and been regarded as transactions by which security was furnished by a pledge of real estate for the payment of debts.   Courts of Equity from an early date had so regarded them, and Courts of Law, by " a gradual and almost insensible progress," as Kent observes, had adopted the equitable view of the subject, though, we may add, not always carrying the equitable doctrine to its logical result.   (4 Kent, 160.)   The equitable doctrine had prevailed to such an extent, that in nearly all the States the interest of the mortgagee was treated by the Courts of Law as real estate only so far as it was necessary for the protection of the mortgagee, and to give him the full benefit of his security.   Thus, in *Ellison* v. *Daniels*, (11 New Hampshire, 274) the Court said :  " The right of the mortgagee to have his interest treated as real estate extends to and ceases at the point where it ceases to be necessary to enable him to protect and to avail himself of his just rights, intended to be secured to him by the mortgage. To enable the mortgagee to sell and convey his estate is not one of the purposes for which his interest is to be treated as real estate. There is no necessity that it should be so treated for that purpose. That can be equally well effected in the usual way of assigning and transferring the debt secured by the mortgage.   The mortgagee is secured and fortified in all his rights without the adoption of any such principle, and the plain purposes of a mortgage forbid it. The object of the mortgage is the security of the debt ; and it is obvious reason that he only who controls the debt should control the mortgage interest."   In that case the demandant was mortgagor, and the tenant claimed title under the mortgagee by various mesne conveyances executed after the law day, and it was held, in accordance with the views expressed in the above citation, that nothing passed to the tenant.   So, in *Jackson* v. *Willard*, (4 Johns. 41) it was held that lands mortgaged could not be sold under execution against the mortgagee, though the estate, according to the terms of the instrument, had become absolute.   And in

*Johnson* v. *Bronson*, (19 Johns. 325) a mortgagor in fee sustained ejectment against the grantee of the mortgagee, the Court holding the assignment of the interest of the mortgagee in the land, without an assignment of the debt, a nullity. (See also *Ewer* v. *Hobbs*, 5 Met. 3 ; *Howard* v. *Robinson*, 5 Cush. 123, and Hilliard on Mort., vol. 1, ch. 13, and cases there cited.)

It was from a consideration of the character of the instrument, as settled by these decisions and the modern cases generally, that we were induced to adopt the equitable doctrine as the true doctrine ; and it was from a consideration of the provisions of the statute which led us to go beyond those cases, and carry the doctrine to its legitimate and logical result, and regard the mortgage as a security under all circumstances, both at law and in equity. Mortgages, therefore, executed before the statute, can only be treated as conveyances when that character is essential to protect the just rights of the mortgagee ; mortgages since the statute are regarded at all times as mere securities, creating only a lien or incumbrance, and not passing any estate in the premises. (*Fogarty* v. *Sawyer*, 17 Cal. 592 ; *Lord* v. *Morris*, 18 Id. 487, 488.)

As the mortgage is a mere security, it is plain that default in the payment of the debt secured cannot change its character. Payment after default will operate as an extinguishment of the lien equally as payment at the maturity of the debt. " Indeed, in those Courts, with some few exceptions, where the common law view of mortgages is the most strictly adhered to, payment of the debt," as we said in *McMillan* v. *Richards*, " is held to revest the estate without a reconveyance in the mortgagor, though it is difficult to see upon what principle. If the mortgage is a conveyance after default, it must be equally so before ; the only difference being that, in the one case, the estate conveyed is conditional, and in the other, absolute. If, after default, the estate be absolute, it is not easy to perceive how the grantee can be divested without deed under the Statute of Frauds ; and yet, according to the general doctrine of the modern cases, payment has that effect." (9 Cal. 411.) This general doctrine is inconsistent with the theory that the mortgage is a conveyance after default, but is consistent with the theory that it is only an instrument of security.

Was the interest of the mortgagee affected by the fact that he was in possession of the premises ? According to the language of many of the adjudged cases in other States, the taking of possession after condition broken is considered as in some way enlarging the rights of the mortgagee. Thus, in New York, he is said to have before possession only a chattel interest, but after possession taken to have the title of the mortgagor. For this reason the mortgagee of a term in possession is there held liable as assignee upon the covenants of a lease, but is not held liable if out of possession. (*Astor* v. *Hoyt*, 5 Wend. 603.)

Upon this point the observation of Mr. Chief Justice Hosmer of the Supreme Court of Connecticut, in *Clark* v. *Beach*, (6 Conn. 161) appear to us to have great force, though he differed with his associates. In that case a mortgage deed was admitted in evidence to sustain the defendant's plea of title. The mortgagee was in possession, and the law day had expired. The Chief Justice was of opinion that the deed should have been rejected; and in reply to the statement on the argument that the mortgagee's possession had enlarged his title, said: " In my judgment, a more gratuitous assertion cannot be made. There is nothing in the nature of this fact *per se* that adds to the mortgagee's title, or the title of any other person. Before entry, the grantee of land, except where possession is requisite to commence a right, has title not enlarged by subsequent occupation; as such occupation confers not any right, but merely gives the enjoyment of a right antecedent. If the supposition, which neither principle nor analogy countenances, were true, that the possession of the mortgagee gives him seizin of the freehold, he would always be seized, for he would never fail to enter. After possession, just as before, the estate mortgaged is a pledge only; the relation of creditor and debtor exists; the equity of redemption is unimpaired; or, if the law day has not elapsed, the payment of the debt annihilates all the rights of the mortgagee, and everything is in *statu quo*. All this is true until foreclosure is effected. Then it is that the mutual relation of the parties becomes changed. There is no longer a mortgage or pledge, a creditor or debtor, a mortgagor or mortgagee, or an equity of redemption. The mortgaged premises, by a legal appropriation thereof, are lost

to the mortgagor forever, and the mortgagee has become tenant in fee simple."

But it is not necessary to argue the point upon principle, for it has been expressly decided in this Court. In *Johnson* v. *Sherman* (15 Cal. 287) an assignment was executed to the defendant of a leasehold interest in certain premises as security for a loan of money. The assignment was therefore in fact a mortgage. The defendant took possession, and continued in possession after the loan made had matured, and the question presented was whether, as mortgagee of the term in possession, he was liable upon the covenants of the lease. According to the authorities of New York, to which we have already referred, a mortgagee of a term out of possession is not thus liable, because he has then only a chattel interest; but in possession is held liable, because he is then considered to have the title of the mortgagor. The point for determination, therefore, was whether in this State the fact of possession affected the interest of the mortgagee. The Court held that it did not. After stating that default in payment did not change the character of a mortgage, the Court said: "Nor can possession under the mortgage affect the nature of the mortgagee's interest; it does not abridge or enlarge his interest, or convert what was previously a security into a seizin of the freehold; it does not change the relation of creditor and debtor, or impair the estate of the mortgagor, but leaves the rights and interests of the parties exactly as they existed previously. Possession taken by consent of the owner, or by contract with him, may confer rights as against third parties, but they are independent and distinct from any rights springing from the mortgage, from which they derive no support."

It follows, from the views we have expressed, that Meacham, as mortgagee after condition broken, whether in possession or out of possession, could not convey the legal title. He did not hold it. He held, by virtue of the mortgage, only a lien upon the premises, and that was a mere incident of the debt. His deed, therefore, as mortgagee alone, without a transfer of the debt, passed nothing. (See cases cited above.)

Although a mortgage in this State of itself confers no right of possession, yet, when possession is taken by the mortgagee after

condition broken, by consent of the mortgagor, it will be presumed, in the absence of clear proof to the contrary, to be with the understanding that the mortgagee is to receive the rents and profits, and apply them to the payment of the debt secured.   There is, indeed, no other good reason why the mortgagee should be let into possession in preference to any other party.   And unless a limitation to the period of possession is fixed at the time, it will be considered as extending until the satisfaction of the debt.  Having thus entered, the mortgagee can hold against the mortgagor, and all others, until such satisfaction is obtained.   And though the legal title to the premises is not held, and as a consequence cannot be conveyed by the mortgagee, the temporary possessory right thus acquired may be transferred.   The transferree will be substituted to his position, and be subjected to the same liabilities—that is to say, the rents and profits received by the transferree will be treated as received by the mortgagee, and applied to the discharge of the debt. (*Smith* v. *Smith*, 15 N. H. 55.)

In the present case the mortgagee went into possession by consent of one of the mortgagors, and it would seem without objection from the other mortgagors ; but he did not convey or attempt to convey any possessory rights which he may have thus acquired, or his interest generally.   His deed only purports to transfer such interest as he could convey as mortgagee, and by virtue of the power already referred to from the mortgagors.

The question then arises as to the effect of the conveyance as executed under the power.   The testimony of the mortgagee as to the contents of the power, for the instrument itself was lost, shows that in terms it authorized him to sell and convey the premises in his own name and apply the proceeds to the payment of the debt, but it fails to show positively that the power was under seal. The mortgagee testifies that he has no distinct recollection whether the power was under seal or not, but thinks that it was sealed, as he was in the habit of putting a seal to all instruments connected with the transfer of real estate.   He was an auctioneer at the time, and frequently sold real estate.   The presumption from this habit, if any presumption could be indulged at all, would be that the power in question was sealed.   The evidence clearly does not war-

rant the finding of the referee that it was not under seal. But as the case must go back for a new trial upon the last proposition of the appellant, it is unnecessary to express any opinion, whether if the power were in fact under seal the conveyance from Meacham in pursuance of it was sufficient to pass the legal title. Assuming that it was not under seal, and that therefore it was insufficient to authorize the execution of the conveyance of the fee, it was sufficient to authorize the execution of a contract of sale. And the instrument in question, reciting the sale, is a sufficient "note or memorandum" of such contract; in other words, if the deed executed was inoperative as a conveyance, it was good as an agreement to convey. And the purchaser having paid the purchase money, and entered into possession of the premises, a Court of Equity will protect him and parties claiming under him against subsequent purchasers with notice. This protection the Court will afford by enjoining any interference with the premises on the part of the adverse claimants, or by directing a conveyance of the title from them, or in such other manner as will most effectually quiet the possession. The inquiry then arises, whether the plaintiff purchased the legal title—treating the instrument executed by Meacham as a mere agreement to convey—with notice of the equity of the landlord of the defendant. The plaintiff traces his title by conveyance from the surviving assignee of Finley, Johnson & Austin, and from the surviving member of the firm. On the fifteenth of July, 1850, Finley, Johnson & Austin, being unable to pay their debts, made a general assignment of all their real and personal property to Spence & Bowie upon certain trusts. On the second of March, 1859, Johnson, the sole surviving member of the firm of Finley, Johnson & Austin, executed a deed of the premises in controversy to the plaintiff. On the twenty-first of March, 1859, Spence, the sole surviving trustee under the assignment, also executed a deed of the same premises to the plaintiff. At the time the assignment in July, 1850, was made, Finley, the purchaser from Meacham, was in the open, notorious, and exclusive possession of the premises; and at the time the two deeds were executed to the plaintiff the defendant was in like possession. There is no doubt that this possession was sufficient to put the plaintiff upon

inquiry as to the interest, legal or equitable, which the defendant held. (*Lestrade* v. *Barth*, 19 Cal. 660 ; *Hunter* v. *Watson*, 12 Id. 404 ; *Pritchard* v. *Brown*, 4 New Hamp. 404.) But when the plaintiff ascertained that the defendant was a tenant under Wheelock, was he bound to extend his inquiry to the interest of the landlord — in other words, was the possession of the tenant notice of the landlord's title ? In *Smith* v. *Dall* (13 Cal. 510) this question was answered in the negative by Mr. Chief Justice Terry, but as there was only a special concurrence in the judgment in that case, the opinion filed by him is not an authoritative statement of the law binding upon us. The opinion was based upon a dictum of Sugden, and observations in *Flagg* v. *Mann* (2 Sumn. 555) where Mr. Justice Story, in adopting the view of Sugden, substantially admits that there is no authority for the position, except the great experience and acknowledged ability of the author. To our minds a persuasive argument against the doctrine is found in the statement by Sugden of the consequences to which it would lead. " Therefore," he says, " if a person equitably entitled to an estate let it to a tenant who takes possession, and then the person having the legal estate sells to a person who purchases *bona fide*, and without notice of the equitable claim, the purchaser must hold against the equitable owner, although he had notice of the tenant being in possession." (2 Sug. on Vendors, 558.)

On the other hand, the opposite doctrine is asserted or assumed to be law in numerous cases. (*Pitman* v. *Gates*, 5 Gilm. 186 ; *Baldwin* v. *Johnson*, N. J. Ch. 441 ; *Diehl* v. *Page*, 2 Greens. Ch. 143 ; *Hanley* v. *Morse*, 32 Maine, 287 ; *Vezio* v. *Parker*, 23 Id. 171.) And it is not easy to give to the fact of possession any influence as notice without making it notice of all such matters as a prudent man, desirous of purchasing the property, would naturally inquire about respecting the title. Ascertaining that the possession of the occupant is that of a tenant, he would in the ordinary course of things proceed to inquire as to the title of the landlord.

The judgment must be reversed and the cause remanded for further proceedings ; and it is so ordered.

NORTON, J.—I agree with the opinion of the Chief Justice upon the point that the instrument executed by Meacham was a sufficient agreement in writing for a sale of the premises by his principals, and that the defendant, being in possession by permission of those principals, in consequence of such instrument being executed, and having paid the purchase money, is entitled to be protected by the equity powers of the Court from an action of ejectment by those principals or those claiming under them, until, at least, an opportunity may be had to acquire the legal title.

I also agree that the possession by the defendant as tenant was notice to put the plaintiff at the time of his purchase on inquiry, and was thus sufficient to charge the plaintiff with notice of the equitable rights of the landlord, under whom the defendant held.

As the case must turn upon these two points, I do not deem it necessary to express an opinion upon the other matters which are discussed by the counsel.

I concur in the decision that the judgment should be reversed and the cause remanded.

COPE, J.—I concur in the judgment of reversal, but do not consider it necessary to pass upon some of the questions discussed in the opinion of the Chief Justice.