No. 2,113.

39  247
120  179

HANNAH MACK, APPELLANT, v. JULIUS WETZLAR, RESPONDENT.

MORTGAGE.—A mortgage does not convey the legal title for any purpose, either before or after condition broken.

IDEM.—A mortgage is a mere security for the payment of money, and passes no estate in land.

IDEM.—A lien held under a mortgage will pass by a simple assignment of the debt, but will not pass by a conveyance of the land alone.

The opinion of the Court in *Dutton* v. *Warschauer* (21 Cal. 609), in relation to mortgages, accepted and approved as law.

APPEAL from the District Court of the Sixth District, Sacramento County.

On the second day of March, 1868, the defendant, Julius Wetzlar, brought suit in the nature of an action of ejectment against the present plaintiff, Hannah Mack, to recover the possession of Lots 1 and 2, between L and M and Twelfth and Thirteenth streets, in Sacramento City. This case went to trial, and judgment was had for the plaintiff, Wetzlar. The defendant, Mack, moved for a new trial, and whilst that motion for new trial was still pending and undetermined, filed the bill or complaint now before this Court, for the purpose of enjoining the further prosecution of the ejectment suit of *Wetzlar* v. *Mack*. This case, now on appeal, was finally brought to hearing in the month of December, 1868, but the same was taken under advisement after the evidence was all in, and not finally decided until February 1st, 1869, on which day a judgment was rendered dissolving the injunction and dismissing the bill.

The defendant, in conjunction with Brannan and others, bought, on the 20th of June, 1850, the entire property of John A. Sutter, Jr., in the State of California. The language of the conveyance, after stating its condition, to wit, the payment of a certain sum of money within a given time, proceeds as follows: "Then this instrument to take effect as a full and complete conveyance in fee of all and singular the lands, tenements, hereditaments, appurtenances and real estate in the State of California, belonging to or in which the

(T.)

said party of the first part (Sutter, Jr.), his heirs, executors or assigns, is or are in any way entitled or interested."

At the date of this conveyance, Sutter, Jr., held a note for a sum of money, and a mortgage to secure its payment, given by Watson *et al.*, on certain property in Sacramento City, embracing the *locus*, which note and mortgage constituted a part of the property purchased, and were transferred and delivered to the defendant, Brannan *et al.*, at the same time the deed was executed and delivered. Subsequently to the date of the deed, and the delivery of the deed and the note and mortgage, Watson, one of the mortgagors, paid his part of the mortgage money, and Pearson and Baker gave their note and a new mortgage to Brannan *et al.* Subsequently to the date of the new mortgage of Pearson and Baker, in September, 1852, it was foreclosed, and the mortgaged property, including the *locus*, sold, and bought in by Brannan and others, the plaintiffs in the foreclosure suit, in the name of Haggin, their attorney, on the 18th of October, 1852. On the day of the Sheriff's sale, he (the Sheriff) executed to Haggin a deed for the property bought, the *locus* being a part. The property was bought in in Haggin's name to make the division among the plaintiffs, Brannan and others, with greater facility. Haggin, a few months afterwards, made deeds to each of said plaintiffs in the foreclosure suit, Brannan and others, for parts of the property—the deed from Haggin to defendant, Wetzlar, being a quitclaim, dated April 22d, 1853, and embracing the *locus*. The premises remained in this condition until the 19th day of April, 1858, when the defendant and his wife executed to Fred. Werner a deed, "conveying his individual interest in and to all property, lots, etc., situated within the corporate limits of Sacramento City, according to the official map thereof, by him, the said Wetzlar, held, or to which he is entitled in common with Samuel Brannan, Bruce *et al.*, under their purchase from John A. Sutter, Jr., of June 20th, 1850, * * * which had not been sold prior to August 28th, 1857, by Wetzlar, Brannan, Bruce *et al.*"

In the year 1857 (the sale to Werner being in April, 1858) Wetzlar testified, in the case of *Brannan* v. *Mesick,* that the

mortgaged property (the *locus* being a part of it) was sold to Brannan, Wetzlar *et al.*, by virtue of the deed of June 20th, 1850.

The plaintiff claims under Werner's deed.

On the 27th day of July, 1860, Haggin obtained from the then ex-Sheriff who made the sale in 1852, a second deed for the property then sold by him under the foreclosure sale, embracing the *locus*. And in January, 1868, the defendant obtained from Haggin a second voluntary quitclaim deed for the same property described in the first quitclaim deed to him from Haggin, embracing the *locus*.

The two last facts are averred in the complaint, which is sworn to, and are not denied in the answer.

Upon this last named deed from Haggin, the defendant bases his claim of title to the *locus*.

*John Heard,* for Appellant.

The appellant insists that the Court below erred in finding that the deed of Sutter, Jr., to Brannan and others, dated June 20, 1850, did not convey any interest in the premises to the grantees in that deed. Plaintiff's motion for a new trial was therefore improperly overruled, and her first error well taken.

Appellant insists that the deed from defendant and his wife to Werner, conveyed his interest in the *locus* to Werner, which interest, under regular mesne conveyances, she now owns. The findings of the Court are, in that particular, erroneous.

Appellant insists that respondent is estopped by his admission, under oath, from denying that Brannan and others did obtain right to the *locus* under and by virtue of the deed from Sutter, Jr., to them, dated June 20, 1850.

The Sheriff's sale of the mortgaged property was a sale to the plaintiffs in the foreclosure suit, the defendant and others —Haggin being their attorney, and purchasing for them.

The first Sheriff's deed to Haggin, dated October, 1852, being prematurely made, and void, did not affect the interest which the plaintiffs, Brannan and others, obtained under the

sale, nor could the deed from Haggin to them, before Haggin obtained the legal estate by a valid conveyance, affect their equitable interest under the sale. The estate owned by defendant and others, remained up to the date of the second Sheriff's deed to Haggin, in 1860, unchanged; nor did they obtain any legal title till Haggin made deeds in 1868; but each of the plaintiffs in the foreclosure suit held, till then, an equitable interest in common with the others, in *all* the property bought by Haggin, but no exclusive right to any.

The defendant, after his sale to Werner of April 19, 1858, was, as to the premises, a mere dry trustee, and his receiving a deed from Haggin subsequently in his own name—but, indeed, in satisfaction for his former undivided interest in the property, which, till then, was owned by them in common with Brannan *et al.*, under the foreclosure sale—enured to the benefit of Werner and his grantees, under his deed of April 19th.

In other words, the three fourths interest which defendant obtained by the deed of Haggin, dated in 1868, being in consideration of one fourth interest in other property conveyed to Werner by the defendant, belongs in equity to Werner and to his grantees. The defendant in the said division acting as the trustee of his grantee, Werner, has no right to set up the legal interest thus fraudulently obtained against his grantee—the *cestui que trust* Werner, and his (Werner's) grantees. But Werner and his grantees have the right to adopt the acts of defendant in the division, and hold the entire interest in the property so set off to defendant by Haggin's deed of 1868.

The second Sheriff's deed to Haggin, and the second deed from Haggin to defendant, did not show any lawful title in the defendant to the *locus* as against the plaintiff, his *cestui que trust*, and the Court erred in not ruling the same out, on motion of the plaintiff.

*P. Dunlap* and *Beatty & Denson*, for Respondent:

Our first objection to this complaint is, that it attempts to supersede and override the motion for a new trial, which

was still pending when the bill was filed. Now, if there is any principle established beyond all controversy in modern jurisprudence, it is this: that a suitor cannot, at one and the same time, pursue two distinct remedies against the same person, to attain the same object.

This bill should have been dismissed : First—Because there is an attempt to prosecute two suits ; to enforce two remedies at one and the same time, against one and the same person, to attain the same object ; to unite the prosecution of the motion for a new trial and this bill for relief by injunction. Second—There is a resort to the equitable relief by injunction where the defense at law is perfect.

The deed of Wetzlar to Werner conveys certain lots by number or other specific description. It then goes on as follows : "And also his *individual* interest in and to all property, lots, ·etc., situate within the corporate limits of said City of Sacramento, according to said official map thereof, by him, the said party of the first part, held, or to which he may be entitled in common with *Samuel Brannan, Bruce et al.*, under their purchase from John A. Sutter, Jr., *as per deed of June* 20, 1850 * * * * which *had not been sold* previous to the 28th day of August, A. D. 1857, by said Brannan, Wetzlar, Bruce *et al.*" The *italicizing* in the above quotation is our own, and not in the original deed.

It will be seen, from the above quotation, that any property which passed to Werner by this general clause in Wetzlar's deed, must have possessed these qualities. First—It must be property *held*, or to which he was *entitled*, in common with Brannan *et al.* It must have been purchased from John A. Sutter, Jr., *as per deed of June* 20, 1850. Third— It must not have been *sold* by Brannan, Bruce *et al.*, prior to the 28th day of August, 1857.

First let us see whether this property was held,.or whether Wetzlar was entitled to it in common with Brannan *et al.*

The title to that property, at the time Sutter made his deed, was.in·Watson, Pearson and Baker, and·Sutter merely had a mortgage lien· on it to secure the purchase ·money. That the fee of the land remained in the mortgagors, we refer to the cases of *Dutton* v. *Warschauer* (21 Cal. 609), and

*Skinner* v. *Buck* (29 Cal. 253), as also to the various author-
ities cited in the former case.

It has been contended that a different rule applies to
mortgages executed before the passage of the Practice Act
of 1851, the sixtieth section of which seems to fix the *status*
of mortgagees and mortgagors. But the 310th Section of
the Practice Act of 1850 (which was passed before the exe-
cution of the Watson, Pearson and Baker mortgage), is just
as explicit as the sixtieth section of the Act of 1851. The
Act of 1850 declares that the judgment by which a mortgage
is *enforced* shall be to the effect that the property be sold,
etc. This, by implication, prohibits the action of ejectment
to recover the property. The sixtieth section of the Act of
1851, by different, but not more expressive language, enacts
the same thing. The two decisions, however, to which we
refer, decide the question directly in reference to mortgages
executed before the passage of either of those Acts.

Next—Were these two lots purchased from Sutter, *as per
deed of June* 20, 1859? Certainly these lots are not men-
tioned or described specifically in that deed, nor can they
be included under the general terms as to all land owned by
Sutter in California. He did not own these lots at the date
of that deed, because he had already sold them. He only
had a lien on them to secure money, not then due. He
could not sell what he did not own. Nor did he, by the
terms of that deed, acquire even the debt which was secured
by a mortgage on those lots.

Lastly—If Brannan *et al.* ever had any interest in this
land, it was sold at the Sheriff's sale in 1852, and J. B.
Haggin became the purchaser.

So these lots possessed neither of the three qualifications,
all of which are necessary to make them pass by the general
clause of the deed from Wetzlar to Werner. They were not
property held in common by Brannan *et al.*; they were not
acquired under the deed of June, 1850, and were not lots
remaining unsold on the 28th day of August, 1857.

*John Heard,* for Appellant in reply.

The appellant insists that the questions arising from this appeal are questions of law *alone;* that the judgment roll, which includes the findings, and such facts as explain them, constitute the whole case on appeal. The motion for new trial was not necessary. The appeal is from the judgment, as well as the order denying the new trial, and the whole controversy rests upon the error in law committed by the Judge in holding the deed from Sutter, Jr., to Brannan *et al.* insufficient to convey grantees any interest in the *locus.* The facts necessary to explain this question are shown by the statement, and no other errors, except those shown by the judgment roll, need be assigned. (See *Treadwell* v. *Davis,* 34 Cal. 601.)

The finding that the deed from defendant and wife to Fred. Werner did not convey the premises, is a corollary—not an independent fact. The position of the Court is, if the defendant obtained no right—that is, if his interest to the premises is not a fruit of the deed from Sutter, Jr., to Brannan *et al.,* the deed to Werner did not convey his interest; so that finding rests upon the hypothesis that the deed from Sutter, Jr., conveyed to Brannan *et al.* no interest or right in the premises; in other words, that his right to the *locus* does not grow out of the deed from Sutter, and is not a part of that purchase. So the whole matter to be reviewed is the decision of the Court below, that the deed from Sutter to Brannan *et al.* did not embrace any right to the *locus;* or, in more accurate language, that the defendant's right to the property was not one of the fruits of that deed.

TEMPLE, J., delivered the opinion of the Court:

The statement on motion for a new trial contains no specification of the particulars in which the evidence is insufficient to sustain the findings, nor of the errors in law, upon which plaintiff would rely for a new trial. The one hundred and ninety-fifth section of the Practice Act explicitly provides that, if these specifications are not made, the statement shall be disregarded.

If, however, we could regard the specification in the notice. of intention to move for a new trial as a compliance in the requirement of the statute, but one specification is made in it, and that is that the evidence shows that the *locus in quo* was conveyed by Sutter, Jr., to Brannan, Bruce, Graham and Wetzlar, by deed dated June 20th, 1850 ; and the Court finds that said deed did not convey said premises to Brannan, Bruce, Graham and Wetzlar. That a mortgage does not convey the legal title for any purpose, either before or after condition broken, is well settled in this State. But it is contended that this doctrine is the result of the two hundred and sixtieth section of the Practice Act, which section became a law in 1851, and that the mortgage in question, having been executed prior to the passage of this Act, is ·unaffected by it. Doubtless that statute has had its influence in bringing about the adoption of that view; but a careful examination of the decisions upon that question will show, that they are not based entirely upon the statute, and, indeed, the language of the statute would, of itself, hardly warrant such a conclusion. It declares, substantially, that a mortgage shall not be considered a conveyance, whatever its terms, *so as* to enable the owner of the mortgage to recover possession of the land, without foreclosure and sale. This provision has reference solely to the effect of the mortgage upon the right of possession ; but many other consequences were supposed to flow from the common law doctrine, that, after condition broken, the title was vested in the mortgagee, as, for instance, that the mortgage might be foreclosed, notwithstanding the fact that the Statute of Limitations has run against the debt secured by it.

In *McMillan* v. *Richards* (9 Cal. 365), Justice Field, in delivering the opinion of the Court, places this doctrine not only upon the ground of the statute, but also upon the ground that Courts of law in this country have, by gradual and insensible progress, adopted the equitable view of the subject, and uses this strong language : ''In truth, the original character of mortgages has undergone a complete change. They have ceased to be conveyances except in form. They are no longer understood as contracts of purchase and sale

.between the parties, but as transactions by which a loan is made, on one side, and security for its repayment furnished, on the other. They pass no estate on the land, but are mere securities—and default in the payment of the money secured, does not change their character."

And in *Dutton* v. *Warschauer* (21 Cal. 609), where the precise question was discussed—though, as there was a special concurrence, the point was not decided—Judge Field says : "In *McMillan* v. *Richards*, we had occasion to consider the subject at great length, and to observe upon the diversity existing in the adjudged cases. We there asserted, what had previously been held in repeated instances, the equitable doctrine as the true doctrine respecting mortgages, and have since applied it under all circumstances. When, therefore, a mortgage is here executed, the estate remains in the mortgagor, and a mere lien or incumbrance is created."

And, again : "The counsel for the defendant does not controvert the doctrine thus stated as applicable to mortgages executed since the Statute of 1851, but appears to consider‡ that it was not intended to embrace mortgages previously executed. In this view they are only partially correct. The doctrine was established, not merely from a consideration of the provisions of the statute, but also from a consideration of the real object and intention of the parties in executing and receiving instruments of this kind. In truth, mortgages had long before lost, for nearly all purposes, their common law character as conveyances, and been regarded as transactions by which security was furnished by a pledge of real estate for the payment of debts. Courts of equity had from an early date so regarded them, and Courts of law, by 'a gradual and almost insensible progress,' as Kent observes, had adopted the equitable view of the subject, though, we may add, not always carrying the equitable doctrine to its legitimate results."

These extracts show how the case of *McMillan* v. *Richards* was regarded by the Justice through whom the decision was pronounced, and that the decisions in this State, which adopt the equitable doctrine of mortgages are not founded wholly upon the statute.

Although the opinion of Judge Field, in *Dutton* v. *War-schaner*, was not assented to by the other Justices—and, therefore, was not, strictly speaking, authority—it has been universally accepted as law, and the subsequent decisions of this Court are all in harmony with it.

The lien which Sutter, Jr., had under this mortgage was not an estate in land. It was neither *jus in re* nor *jus ad rem.* It was a mere right to have the debt paid out of the proceeds of the property, unless it were otherwise paid. This right to hold the land as security would pass by a simple assignment of the debt, but would in no case pass by a conveyance of land alone.

Order affirmed.

SPRAGUE, J., expressed no opinion.