# THE SUPREME COURT

OF THE

## TERRITORY OF NEW MEXICO.

### JANUARY TERM, 1908.

· [No. 1152. January 13. 1908.]

## THE STEARNS-ROGER MANUFACTURING COMPANY, ET AL., Appellees, v. THE AZTEC GOLD MINING AND MILLING COMPANY, ET AL., Appellants.

### SYLLABUS (BY THE COURT).

1. Under the facts disclosed by the record it is held; That the appellees were entitled to Mechanics Liens for the materials furnished and the labor performed by them, respectively.

2. The Trial Court did not err in holding that the lien extended to the Aztec mine as well as the millsite, where the evidence showed the title in the same parties and that the one was necessary for the convenient use and occupation of the other, and that the mill and mine were connected by a tramway, the mill being used and capable of being used only for the sole purpose of treating the ores extracted from the mine, under our statutes which makes it the duty of the Trial Court to determine upon what amount of land the lien attaches in rendering judgment.

3. The mortgagee of a mortgage or the trustee and cestuis' que trust of a trust deed in the nature of a mortgage, have no such interest in the real estate upon which a Mechanics Lien is claimed as to compel them to post the notice required under Sec. 2226, Compiled Laws, where the mortgage or trust deed was given and duly recorded as required by law, prior to the time the work was performed, or the materials

commenced to be furnished for which the Mechanics Lien is claimed.

4.　Notice to the general manager of a corporation of the erection of improvements upon the lands owned by it, or to which it has or claims some interest, is sufficient notice to the corporation, so that its interest will be subject to a Mechanics Lien in the absence of the posting of the notice required by Sec. 2226, C. L., 1897.

Appeal from the District Court for Colfax County, before WILLIAM J. MILLS, Chief Justice.　Reversed.

T. B. CATRON, C. A. SPIESS and E. V. LONG, for Appellants.

If the alleged deed of trust was a mortgage in effect here or an "encumbrance" akin to a mortgage, being duly recorded, it could not be displaced by or postponed to a lien of material man or laborer arising thereafter.　A mortgage as between mortgagor and mortgagee does not convey the legal title to the mortgagee.　Compiled Laws 1897, secs. 2220, 2226; Fugay v. Stickney, 41 Cal. 585, 586, 597, not controlling; McMillan v. Richards, 9 Cal. 365; Nagle v. Macy, 9 Cal. 426; Hafner v. Myer, 13 Cal. 13; Koch v. Briggs, 14 Cal. 256, 262, 73 Am. Dec. 651; Clark v. Baker, 14 Cal. 612; Johnson v. Sherman, 15 Cal.; Dutton v. Warschauer, 21 Cal. 609, 621, 622; Preston v. Sonora Lodge, 39 Cal. 117; Thompson v. McKay, 41 Cal. 221; Whitmore v. San Francisco Savings Union, 50 Cal. 149; Grant v. Burr, 54 Cal. 300; Bateman v. Burr, 57 Cal. 480; Durkin v. Burr, 60 Cal. 360; Williams v. S. C. Mining Association, 66 Cal. 193, 196, 200; Savings and Loan Soc. v. Deering, 66 Cal. 281; Partridge v. Shepard, 71 Cal. 477; in re McConnel, 74 Cal. 218; Tolman v. Smith, 74 Cal. 349; More v. Calkins, 95 Cal. 435, 29 Am. St. Rep. 128; Savings Society v. Burnett, 106 Cal. 528; Alexander v. Cleland, 86 Pac. 427; Page v. Foster, 7 N. H. 394; Ellison v. Daniels, 11 N. H. 274; Great Falls Co. v. Worster, 15 N. H. 434; Wilcox v. Morris, 1 Murth (Me.) 116; in re Railway Co., 50 Me. 552; Prescott v. Trueman, 1 Mass. 629; Ewer v. Hobs, 5 Metc. 1-3 (Mass.); Norcross

v. Norcross, 105 Mass. 265; Hayes v. Fessenden, 106 Mass. 228, explained; Davis v. Humphrey, 112 Mass. 323, 324, distinguished; Judge v. Conn, 132 Mass. 623; Huntington v. Smith, 4 Conn. 237; Norwich v. Hubbard, 22 Conn. 594; Whiting v. City of New Haven, 45 Conn. 305; Farmers Loan and Trust Co., 13 N. Y. 213, et seq.; Murray v. Walker, 31 N. Y. 399; Trimm v. Marsh, 54 N. Y. 692; Sexton v. Reese, 135 N. Y. 390, 391; Hill v. Witmer, 2 Phila. 72; Fox v. Wharton, 5 Del. ch. 200; Wilcox v. Morris, 1 Murph. (N. C.) 116; Vason v. Ball, 56 Ga. 268; McMahon v. Russell, 17 Fla. 698; Magee v. Carpenter, 4 Ala. 469; Knox v. Easton, 38 Ala. 356; Smith v. Doe, 26 Miss. 291; Carpenter v. Bowen, 42 Miss. 48-53; Buckley v. Daley, 45 Miss. 345; Clark v. Wilson, 53 Miss. 129; Wooley v. Holt, 14 Bush, Ky. 794; Johnson v. Clarke, 5 Ark. 321; Ashley & Watkins v. Lawson et. al., 6 Ark. 269; Turner v. Watkins, 31 Ark. 437; Thayer v. Campbell, 9 Mo. 227; Whittesley v. Hughes, 39 Mo. 20; Pullis v. Kalb, 62 Mo. App. 29; Picket v. Jones, 63 Mo. 199, distinguished; Masterson v. R. R. Co., 72 Mo. 347; Crosby v. Huston, 1 Tex. 239 et seq.; McLane v. Paschal, 47 Tex. 365, 369; Blackwell v. Barnett, 52 Tex. 326, 333; Miami Co. v. Bank, Wright, Ohio Rep. 252, 253; Hoffman v. MacKall, 5 Ohio St. 124, 130, 131; Moore v. Burnett, 11 Ohio 334; Morris v. Way, 16 Ohio 469; Woodruff v. Robb, 19 Ohio 212, 215, 216, 217; Cottrell v. Long, 20 Ohio 464, 469, 472; Martin v. Alter, 42 Ohio St. 94, 98, 99; Reasoner v. Edmundson, 5 Ind. 394, 397; Frances v. Porter, 7 Ind. 213; Hill v. Kirby, 7 Ind. 217; Wright v. Bundy, 11 Ind. (Tanner) 398, 404; Coe v. Johnson, 18 Ind. 218; Morton v. Noble, 22 Ind. 160; Coe v. Brown, 22 Ind. 252; Grable v. McCulloch, 27 Ind. 472; Fletcher v. Holmes, 32 Ind. 513; Bloom v. Renselaer, 15 Ill. 505, 506; Sargent v. Howe, 21 Ill. 149; Lewis v. Lynch, 61 Ill. App. 481, 482; Lightcap v. Bradley, 186 Ill. 518, 519; Kranz v. Uedelhofen, 193 Ill. 477; Fanning v. Kerr, 7 Ia. 450; Crocker v. Robinson, 8 Ia. 404; Newman v. Samuels, 17 Ia. 527, 535; Thorp v. Durbon, 25 Ia. 172; White v. Rittenmeyer, 30 Ia. 268; Ingle v. Cuthbertson, 43 Ia. 265; Chick v. Willets, 2 Kan. 385, 386, 391; Seibert v.

Thompson, 8 Kan. 73; Brenner v. Thompson, 8 Kan. 502; Bullene v. Hiatt, 12 Kan. 101; Lenox v. Reed, 12 Kan. 223, 227; Curtis v. Buckley, 14 Kan. 456; Pritchett v. Mitchell, 17 Kan. 358; Nelson v. DeBoe, 18 Kan. 223; Watterson v. Devoe, 18 Kan. 233; Blandin's Admr. v. Wade, 20 Kan. 254; Vanderslice v. Knapp, 20 Kan. 649; Seckler v. Delfs, 25 Kan. 165; Burhans v. Hutcheson, 25 Kan. 630; McDonald v. Kellogg, 30 Kan. 172; Goodridge v. Comrs. of Atchison Co., 47 Kan. 360; Hutchinson v. Myers, 52 Kan. 294; Kyger v. Ryley, 2 Neb. 20, 28; Webb v. Haselton, 4 Neb. 308, 318; Hurley v. Estes, 6 Neb. 386, 389-391; Kemp v. Small, 32 Neb. 318; Rogan v. Walker, 1 Wis. 527; Brinkman v. Jones, 44 Wis. 510; Wis. C. R. Co. v. Wis. R. L. Co., 71 Wis. 98, 99; McHugh v. Smith. 9 Minn. 252; Woodbury v. Dorman, 15 Minn. 338; Jones v. Taintor, 15 Minn. 512; Land v. Morey, 40 Minn. 396; Cullen v. Casey, 95 N. W. 605; Eyster v. Gaff, 2 Colo. 228; Stevens v. Clay, 17 Colo. 484, not in point; Lewis v. Hamilton, 36 Colo. 263; Brown v. Bryan, 6 Idaho 16-19; Bass v. Bucher, 6 Mont. 442; Morris v. Held, 12 Mont. 252; Frankel v. Creditors, 20 Nev. 55, 56; Kirman v. Powning, 25 Nev. 297, 298; Capital Lumber Co. v. Ryan, 34 Oregon 79; Shelton v. Jones, 1 Wash. 692; S. & T. Co. v. Bolton, 5 Wash. 763-765; Friezen v. Alemania Co., 30 Fed. Rep. 358; U. S. Patrick, 54 Fed. 348; Gilman v. Illinois Tel. Co., 91 U. S. 603; Shillaber v. Robinson, 97 U. S. 68, 77, 78; Nelson v. Wells, 104 U. S. 440; Glover v. U. S., 164 U. S. 296, 297; Whitney v. Fox, 166 U. S. 646; Hoffman v. Cross, 199 U. S. 346; Platt v. The N. P. R. R. Co., 99 U. S. 57, 58; Terrell v. Allison, 21 Wallace 293; McGregor v. Hall, 3 Stew. & Porter 397; Hughes v. Edwards, 9 Wheat. 495; s. c. 2 Cowen 195; Mechanics Bank v. Seaton, 1 Pet. 299; Boon v. Childs, 10 Pet. 324; Wilson v. Troup, 7 Johns. Ch. Rep. 25; Hutchins v. King, 1 Wall. 57, 58; Carpenter v. Longan, 16 Wall. 274; Wolfe v. Dowell, 13 Sm. & Mar. 103; Fox v. Channing, 1 Rand. 306; Bartlett v. Teah, 1 McCreary 176, 178; McGan v. Marshall, 7 Humph. 126; Peck v. Genness, 7 How. 622; Jackson v. Willard, 4 Johns. 41; Aymer v. Bill, 5 Johns. 510; Runyan v. Mersenau,

11 Johns 534; Jackson v. Hart, 3 Johns. 329; Titby v. Wolstenholme, 7 Beav. 425, distinguished; Flagg v. Mann, 2 Sum. 503, 533; 6 Dana 473; Casborne v. Scarfe, 1 Atk. 603; 3 Hill 100; Woolley v. Holt, 14 Bush. 791; Eaton v. Whiting, 3 Pick. 484, 485, 488; Jackson v. Blunt, 2 Dev. Eq. 555; Steele v. Steele, 4 Allen 417, 419; Bennet v. Union Bank, 5 Humph. 612; Landfair v. Landfair, 18 Pick. 299, 304; 7 Wend. 348; Code of Civil Procedure, sec. 187; Chapter 51, Laws of 1899; sec. 2365, C. L. 1897; 1 Beach on Mod. Eq. Jur., sec. 446; 2 Sutherland on Stat. Cons., sec. 863; 2 Greenleaf, sec. 242; Jones on Liens, secs. 10, 1108; 24 A. & E. Cyc. Law 962, 967; 26 Id. 1 ed., Title Trust Deeds, sub. div. 5, pp. 860, 874, 880, 881; 28 Id., 2 ed., Trust Deeds, sub. sec. 3 b, pp. 752, 753; 1 Jones on Mort., 25-48, 52-57, 59 note 200, 62 and authorities cited, 105, 106, 664, 665, 669; 2 Beach on T. T., sec. 629, note 1; Willard's Eq. 430; Coote on Mort., 3 ed., 54, 55, note a; Perry on Trusts. sec. 602 b, 603 d, ff, i; Martindale on Conveyancing, sec. 424; 1 Kent., 1 Doug. 632; 4 Kent's Com. 136, 146, 147; Powell on Mort. 9, 10; 2 Story Eq. Jur. secs. 1017, 1018; 2 Devereaux Eq. 555; Judge Dillon in Am. Law Register, vol. 2, 642, 648; Anderson's Law Dictionary 562, 623; Wash. on Real Prop. 44, sec. 7, 479; 2 Mad. Ch. 125; 1 Sch. & Lef. 262; 9 Enc. of P. & P. 118; 1 Hillard on Mort. 359.

The contract in question is a contract fully performed and executed in Colorado; the right of action on it under the lien law accrues only in Colorado and the contract was governed by the laws of Colorado. Story on Sales, sec. 335; Burkhart v. Reisig, 24 Ill. 531; Compiled Laws, 1897, sec. 2221; Birmingham Foundry v. Glencove Co. 78 N. Y. 31; Campbell v. Coon, 28 N. Y. Supp. 561, overruled in 44 N. E. Rep. 300; 49 Barb. 250; 45 Barb. 249; 3 Comstock 438; 17 N. Y. 465; 5 Sanford 362; 2 Bosw. 506.

"When a legal act is reduced to a single memorial all other evidences of the parties on that topic are legally immaterial for the purpose of determining what are the terms of the act." Wigmore on Ev. sec. 2425; Picker-

ing v. Dawson, 4 Taunt. 786; Kain v. Old, 2 B. & C. 634; Knight v. Barber, 16 M. & W. 66; Angell v. Duke, 38 Le. or N. S. 220; Vansykle v. Dalrymple, 32 N. J. Eq. 233; Insurance Co. v. Martin, 40 N. J. L. 581; Langton v. Higgins, 4 H. & N. 408; Kelly v. Cunningham, 1 All. 473; Goss v. Lord Nugent, 5 B. & Ab. 58; Compiled Laws 1897, sec. 2217; Phillips on Mechanics' Liens, sec. 122; Albert Bottomly v. The Rector etc., of Grace Church, 2 Cal. 90; Houghton v. Blake, 5 Cal. 240; H. F. Holmes et. al., v. Ritchett et. al., 56 Cal. 307; Cohn v. Wright, 89 Cal. 86; Roebling Co. v. Bear Co. et al., 99 Cal. 488; Netherly v. Van Wyck, 128 Cal. 329; Holmes v. Ritchett, 56 Cal. 310; Coleman v. Stearns Manufacturing Co., 38 Mich. 32-34; C. L. Co. v. Ryan, 34 Ore. 77-80; Stout v. Sawyer, 37 Mich. 315; Genest et. al. v. The Las Vegas Bldg. Assn., 11 N. M. 250, distinguished.

The extension by a creditor of a debt to a principal, that is giving more time, releases any sureties that may exist. Hill v. Witmer, 2 Pa. Rep. 72; 1 Bry. on Sur. & Guar. 376, 398; French v. Bates, 149 Mass. 73; Antisdel v. Williamson, 165 N. Y. 372; Clark A. D. M. v. Dane, 128 Ala. 122; Morgan v. Their Creditors, 1 La. 527; Fellows v. Prentiss, 3 Den. 512; Greene v. Bates, 74 N. Y. 333; Bank v. Leavitt, 65 Mo. 562; Robinson v. Offutt, 7 T. B. Mon. 540.

The mechanic's lien law only gives a lien on the property where the improvements are made. Stevens v. Lincoln, 114 Mass. 478; 5th Allen 406; 106 Mass. 531; Gibbs v. Hanchette, 51 N. E. 691; Jones v. Keen, 115 Mass. 185; Ross v. Persse & B., 29 Conn. 266; Young v. Chambers, 15 Penn. St. 267; St. Paul & T. L. Co. v. Bolton, 5 Wash. 763-765; Colorado Iron Works v. Taylor, 55 Pac. 945; Cox v. Broderick, 4 E. D. Smith, 723.

"The principal matters that determine whether a corporation may be affected with notice to one of its officers, are the nature of the duties of such officer, and whether they are connected with the facts brought to his attention." Wade on Notice, sec. 683 b; St. Paul & T. L. Co. v. Bolton, 5 Wash. 763.

"A general manager and superintendent of a mine

who does not perform bodily toil, is not entitled to a mechanic's lien upon it under Compiled Laws, 1897, sec. 2217, giving a lien to one who performs labor on any mining claim." Boyle v. Mountain Mining Co., 50 Pac. Rep. 347; Cook v. Ross, 23 S. E. 252, 117 N. C. 193.

The question of attorneys fees is not for the master, that is for the court alone. An allowance of fifteen per cent. on a little over $6,000 is excessive.

The court erred in taking notice of any proceeding in another case, without having it in evidence in this case. People v. De la Guerra, 24 Cal. 77, 78; Lake Merced Water Co. v. Cowles, 31 Cal. 217; State v. Edwards, 19 Mo. 674; Banks v. Burnham, 61 Mo. 77; Armendariz v. Lerner, 40 Tex. 303; Baker v. Mygalt, 14 Ia. 131; Enix v. Miller, 54 Ia. 553; Bates v. G. W. Tel. Co., 35 Ill. App. 254; Gibson v. Buckner, 65 Ark. 86; Nat. Bank v. Bryant et. al., 13 Bush. Ky. 423; Anderson v. Cecil, 86 Md. 493; Daniel v. Bellany, 91 N. C. 81; McCormick v. Herndon, 67 Wis. 652, 653; Wharton on Ev., sec. 326; 17 A. & E. Cyc. 926, n. 6, Judicial Notice.

FRANK SPRINGER and CHARLES A. SPIESS for Appellant, Maxwell Land Grant Company.

If the person who caused the building to be constructed owned less than a fee simple estate in the land attempted to be charged with the lien, then only his interest in the land is subject to such lien; and the interest of the owner in the land may also be subjected to the lien whenever it is determined that the building was constructed with the knowledge of the owner of the fee of such land, and such owner within three days after he obtained knowledge of the construction failed to give notice in writing that he would not be responsible for the same. Sections 2219 and 2226, Compiled Laws 1897, harmonized; West Coast Lumber Co. v. Newkirk, 80 Cal. 275; Harlan v. Stufflebeem, 87 Cal. 508.

Burden is on the lien holder to prove that the owner had knowledge of the construction of the building. Allen v. Rowe, 19 Oregon, 188, 23 Pac. Rep. 901; Cutter v. Striegel, 4 Wash. 346, 30 Pac. Rep. 326.

If lien holder shows that owner had such knowledge

the burden is then on owner to show he posted the notices in compliance with the provisions of section 2226. Wheaton v. Berg, 50 Minn. 525.

A corporation may constructively have knowledge of a fact because of its officers or agents having such knowledge, but that knowledge must have been acquired by the officer in the course of his employment and must be of matters in the scope of his authority. Duncan v. Jaudon, 15 Wall. 165; U. S. v. Canon del Agua Co., 4 N. M. 405; Craig v. Continental Ins. Co., 141 U. S. 638; American Surety Co. v. Pauly, 170 U. S. 133; Hatch v. Ferguson, 66 Fed. Rep. 668; Hadden v. Dooley, 92 Fed. Rep. 274; Bank of U. S. v. Davis, 2 Hill (N. Y.) 451; Lawson Expert & Opinion Ev.; Brinks Ex. Co. v. Kinnare, 168 Ill. 643, 48 N. E. Rep. 446; Walton v. Rlwy. Co., 40 Mo. App. 545; Guffey v. Railway Co., 53 Mo. App. 462; Mammerberg v. Railway Co., 62 Mo. App. 563; Muller v. Gillick, 66 Mo. App. 500; Encyclopedia of Evidence, subject, Principal and Agent, vol. 10, pp. 27, 28; Farrell v. U. S., 110 Fed. 942; John Stuart & Co. v. Asher, 62 Pac. 1051; McClusky v. Monck, 42 N. Y. Supp. 462; Parker v. Brown 131 N. C. 264; McCormick v. Queen of Sheba, etc., 63 Pac. 820; Encyclopedia of Evidence, vol. 3, p. 643; Clark and Marshall on Private Corporations; Goddard v. Crefield Mills, 75 Fed. 818; Holmes v. Montauk Steamboat Co., 93 Fed. 731; Western Union Telegraph Co. v. Way, 83 Ala. 554; Pennsylvania Co. v. Kenwood Bridge Co., 170 Ill. 645; Sweatland v. Illinois & Mississippi Telegraph Co., 27 Ia. 433; Lee v. Marion Savings Bank, 108 Ia. 716; A. T. & S. F. R. R. Co. v. Osborn, 58 Kan. 768; Grady v. Western Union Telegraph Co., 19 Ky. Law Reports 1455; Gilmore v. Mittineague Paper Co., 169 Mass. 471; Andrews v. Tamarack Mining Co., 114 Mich. 375; Browning v. Hinckle, 48 Minn. 544; National Bank of Commerce v. Fitze, 76 Mo. Appeal 356; Nebonne v. Concord R. R. Co., 67 N. H. 531; Merchants' National Bank v. Clark, 139 N. Y. 314; Smith v. N. Ca. R. R. Co., 68 N. C. 107; First National Bank of Portland v. Lynn County Nat. Bank, 30 Ore. 296; Huntington and B. T. M. R. C. Co. v. Decker, 82 Pa. St. 123;

Southwestern Telegraph & T. Co. v. Gotcher, 93 Texas 114; Hardwick Savings Bank & Trust Co. v. Drenan, 72 Vt. 438; Vicksburg & M. Ry. Co. v. O'Brien, 119 U. S. 99; 1 Phil. Ev. 381; 1 Greenleaf, sec. 113; Packet Co. v. Clough, 20 Wall. 540; Story Treatise on Agency, sec. 134; Terry v. Birmingham Nat. Bank, 9 Southern Rep. 299; Wigmore Law of Evidence, sections 1077, 1078, vol. 2; Cyc. vol. 16, pp. 1192, 1198-1200; Bradley v. State, 121 Ga. 201; Hamilton v. N. Y. C. R. R. Co., 51 N. Y. 106; Lutton v. Town of Vernon, 62 Conn. 1; Dwyer v. Dwyer, 26 Mo. App. 647; Cantor v. People, 23 How. Pr. (N. Y.) 243; Bradley v. O'Donoghue, 72 Mo. 563; Bank v. Woody, 10 Ark. 638; Eastlick v. Southern R. R. Co., 116 Ga. 48, 42 S. E. Rep. 499.

HARTMAN & BALLREICH, VEEDER & VEEDER, for Appellees.

"In the absence of express restrictions on his powers, with actual or constructive notice thereof to persons dealing with him, an officer or agent of a corporation entrusted with the general management and control of its business, has implied authority to make any contract or do any other act which is necessary or appropriate in the ordinary business of the corporation." The rule that an officer of a corporation must, in order to make his admissions admissible against the corporation, be acting in the line of his duty, does not apply where the question is one of notice to the corporation. 3 Clark & Marshall on private corporations 2119, and authorities cited in note 963; id. vol. 3, p. 2197, and authorities cited in note 274; U. S. v. Canon del Agua Co., 4 N. M. 405, 17 Pac. 337, 398-400; Duncan et al., v. Jaudon, 15 Wall. 165 (Book 21, p. 141); Appeal of Sturdevant, 42 At. 70, 73, 71 Conn. 392; 1 Enc. of Evi. 557 and authorities cited; Garretson v. Merchants & Bankers Insurance Co., 92 Iowa 293, 60 N. W. 540; Hopkins v. Boyd, 18 Ind. App. 63, 47 N. E. 480; McDermott v. Railroad Co., 87 Mo. 285; City of Delphi v. Lowery, 74 Ind. 520; Rogers v. Trustee N. Y. & Bridge Co., 42 N. Y. Supp. 1046; Peden v. C. R. I. & P. Ry. Co., 78 Iowa 131, 42 N. W. 625, 627; Ayres v. Insurance Co., 17

Iowa 187; 3 Enc. of Ev. 648, 649; Vicksburg & M. Ry. Co. v. O'Brien, 119 U. S. 99, distinguished; Terry v. National Bank, 9 So. Rep. 299, distinguished; 2 Morawetz on Private Corporations, par. 591; Relf v. Rundle, 103 U. S. 222 (book 26, p. 337); Davis v. Old Colony Railroad, 131 Mass. 258, 260.

The deed of trust in this case should be construed as conveying an interest in the property, such as is contemplated by sec. 2226 of the lien law. Fuquay v. Stickney, 41 Cal. 585.

The lien law does not require that there shall be either a written or oral contract between the owner or person interested in the property and those claiming the liens as a condition precedent to a lien being allowed by the law. Ottiwell v. Muxlow et al, 6 N. Y. Supp. 518, 125 N. Y. 706, 26 N. E. 752; Hankinson v. Riker, 30 N. Y. Supp. 1040; Donaldson v. Holmes 23 Ill. 83; Wendell v. Rensselaer, 1 Johns, ch. 343, Storrs v. Barker, 6 id. 166; Cannon v. Helfrick, 99 Ind. 164; Willverding v. Offinder et al, 87 Iowa 475, 54 N. W. 592; Hellwig v. Blumenberg et al, 7 N. Y. Supp. 746; Evans v. Cunningham, 6 Pa. Co. Ct. R. 156; West Coast Lumber Co. v. Newkirk et al, 80 Cal. 275, 22 Pac. 231; Phelps v. Mining Co., 49 Cal. 336; Moore v. Jackson, 49 Cal. 109; Fuquay v. Stickney, 41 Cal. 583; Harlan v. Stufflebeam, 87 Cal. 508, 25 Pac. 686; Shaw et al v. Young et al, 87 Me. 271, 32 Atl. 897; Weber v. Weatherly, 34 Md. 656; Congdon v. Cook, 55 Minn. 1, 56 N. W. 253; Schmaltz et al v. Mead et al, 4 N. Y. Supp. 614, affirmed 125 N. Y. 188, 26 N. E. 251; Otis v. Dodd, 90 N. Y. 336; Husted v. Mathes, 77 N. Y. 388; Hackett v. Badeau, 63 N. Y. 376; Nellis v. Bellenger, 6 Hun. 560; Hammond v. Shepard, 3 N. Y. Supp. 349; Kealey et al v. Murray et al, 15 N. Y. Supp. 403; Buck v. Bowermaster, 36 Ill. App. 510; Collins v. McGraw, 47 Mo. 495; Leisse v. Schwartz, 6 Mo. App. 413; Schmitt v. Wright, 6 Mo. App. 601; McDougall v. Nast, 5 N. Y. St. Rep. 144; Dennis v. Walsh, 16 N. Y. Supp. 257; Einstein v. Jamison and wife, 95 Pa. St. 403; Jobe et al v. Hunter et al, 165 Pa. 530; Heath et al v. Solles et al, 73 Wis. 217, 40 N. W. 804; Scroggin v. Nat-

ional Lumber Co., 41 Neb. 195, 59 N. W. 548; Guiou et al v. Rickman et al (Neb.), 110 N. W. 759; Bohn v. Kountze, 30 Neb. 719, 46 N. W. 1123; Millsap v. Ball, 30 Neb. 728, 46 N. W. 1125; Pickens v. Plattsmouth Investment Co. et al, 37 Neb. 272, 55 N. W. 947; Tinsley v. Smith et al, 101 N. Y. Supp. 382; Hampton et al v. Smith, Ripley v. Smith, 101 N. Y., Supp. 386; Barnard et al v. Langtry et al, 101 N. Y. Supp. 502; Hughes et al v. McCasland et al, 122 Ill. App. 365; Shapleigh et al v. Hull, 21 Colo. 419, 425; Henderson et al v. Connelly, 123 Ill. 98; Davis v. Humphrey, 112 Mass. 309; Hill et al v. Gill et al, 40 Minn. 441; Hickey v. Collom et al, 47 Minn. 565; Philips on Mechanics Liens (3 ed.), sec. 69; Colorado Iron Works v. Taylor et al, 12 Colo. App. 451; Dougherty-Moss Lumber Co. v. Churchill et al, 90 S. W. 405 (Mo.); John Martin Lumber Co. v. Howard et al (Minn.), 52 N. W. 34; Genest Case, 67 Pac. 744, distinguished.

Unless modified by express provision of statute, not only deeds of trust but mortgages, even without power of sale, as well, convey the legal title, and that legal title becomes absolute upon default. Chick v. Willets, 2 Kan. 379; Lenox v. Reed, 12 Kan. Star 227, distinguished; Deering's Civil Code (Cal.) sec. 2927; Comp. Laws, Kan.., 722, par. 2; 2 Neb. 28, distinguished; 6 Neb. 389, distinguished; 44 Wis. 510, distinguished; Simmons v. West Va. Ins. Co., 8 W. Va. 474, 486, citing Bouv. Law Dict., defining defeasance; Miller v. Quick, 158 Mo. 495, 59 S. W. 955, 956; Harrison v. Trustees of Phillips' Academy, 12 Mass. 456, 463; Shaw v. Irskin, 43 Mo. 371, 373; Flagg v. Mann, Fed. Cas. No. 4847; Elder v. Schumacher, 18 Colo. 433, 448, 33 Pac. 175, citing Websters' Dictionary; Capitol Lumber Co. v. Ryan, 34 Ore. 79, 54 Pac. 1093, distinguished; 1 Jones on Mortgages, sec. 47; 2 Jones on Mortgages, sec. 1754; Besser v. Hawthorne, 3 Ore. 133; Roberts v. Sutherland, 4 Ore. 223; Hill's Ann. Law (Ore.) sec. 3672; Williams Case, 66 Cal., 5 Pac. 88, distinguished; Helm v. Chapman, 66 Cal. 291, 5 Pac. 352; Silvester et al v. Coe Quartz Mine Co., 22 Pac. 217; Fuquay v. Stickney, 41 Cal. 583; Preston v. Sonora Lodge, 39 Cal. 117; Bolton case, 5

Wash, 765, 32 Pac. 787, distinguished; Tollman v. Smith, 74 Cal. 349, distinguished; California Civil Code, secs. 863, 866; Alexander v. Cleland, (N. M.) 86 Pac. 427; Ford v. Springer Land Assn. (N. M.) 41 Pac. 541; affirmed in 168 U. S. Bk. 42, 565; Canal Co. v. Gordon, 6 Wall. 561; Minor v. Marshall (N. M.) 27 Pac. 481; Davis v. Farr, 13 Pa. St. 167; Finane v. Hotel Co. etc., 3 N. M. 256, 5 Pac. 725; Baldwin v. Merrick, 1 Mo. App. 281; Tuttle v. Moutford, 7 Cal. 358; Barnes v. Thompson, 2 Swan 313; Barnard v. McKenzie, 4 Colo. 251; 15 A. & E. Enc. of Law 179 and cases cited; Whittelsey v. Hughes, 39 Mo. 20; Davis v. Holmes, 55 Mo. 349; Ch. 52, R. S. Mo. 1879; R. S. of Indiana 1888, sec. 1088; Civ. Code, Neb. 1876, par. 375; Dutham v. Warschauer, 21 Cal. 621.

### STATEMENT OF FACTS

This is a suit brought by appellees, The Stearns-Roger Manufacturing Company, a corporation of Denver, Colorado, and one Smith McKay, also of Denver, to foreclose certain Mechanics Liens, claimed by them on a certain mine in Colfax County known as the Aztec Mine and the mill site adjoining said Aztec mine together with the mill and machinery, tramway, etc., in and about said mine and mill. The Stearns-Roger Company claim a lien by virtue of certain materials and machinery furnished by it to the Aztec Gold Mining and Milling Company for use in said mill and a tramway which connects said mill and the working shaft of the Aztec mine, while McKay claims his lien by reason of labor performed and furnished by him in supervising and constructing the mill, hereinbefore referred to. The record and pleadings are quite voluminous but the principal facts appearing thereby are as follows:

The Aztec mine and the adjoining mill site, are situated on the Maxwell Land Grant and the fee to an undivided seven-twelfths interest hereto is in said company. Some time in the year 1884, the Maxwell Land Grant Company executed a lease on their interest in said Aztec mine to one Valentine S. Shelby for 35 years. The remaining five-twelfths of the Aztec Lode or mine appears to have been vested in James Lynch and Thomas B. Catron and

on  August  15th,  1893,  Shelby,  Lynch  and  Catron,
who then appear to have been the joint owners of the lease
from the Maxwell company to Shelby and of the remain-
ing five-twelfths of the fee, conveyed the same, viz.:  The
undivided five-twelfths of the Aztec lode or mine and the
lease, to one Clinton Butterfield, which deed was duly
acknowledged and recorded in the same month, and on the
same day Butterfield executed a Deed of Trust to Henry
F. Moore, trustee of Valentine S. Shelby, James Lynch
and Thomas B. Catron, on the same property to secure the
sum of $135,000.00 as shown by the terms thereof.  This
Deed of Trust was duly filed for record and recorded in
the records of Colfax County, N. M., August 16th, 1893.
It further appears, (although the deed is not set out in the
record), that Butterfield in some manner transferred and
conveyed all  his interest in the Aztec mine or lode to the
Aztec Gold Mining and Milling Company, about the 21st of
September, 1903.

As the Deed of Trust from Butterfield to Moore is of
vital interest in the outcome of this case, we set it out in
full, as follows:

"This indenture, made this fifteenth day of August,
in the year of our Lord one thousand eight hundred and
ninety-three, between Clinton Butterfield, of the County of
Arapahoe and state of Colorado, party of the first part,
and  Henry F. Moore, of Trinidad, Las Animas County,
Colorado, trustee, party of the second part, witnesseth:

"That said party of the first part, for and in consid-
eration of the sum of one dollar to him in hand paid by
the said party of the second part, the receipt whereof is
hereby acknowledged, has granted, bargained and sold,
and by these presents does grant, bargain, sell and con-
vey unto the said party of the second part, his heirs
and assigns all the following described real estate in the
county of Colfax and Territory of New Mexico, to-wit:
The undivided five-twelfths (5-12s) part of that certain
mine, quartz, lode or lead situate on the eastern slope of
Baldy Mountain, near the head of Ute Creek, and  known
and called by the name of the Aztec mine, being three
thousand feet in length and extending in direction nearly

east and west, as far as can be ascertained without an exact survey, being the same lead or lode discovered by Timothy Faley, Mathew Lynch and Mamey Dougherty, and extending two thousand feet on the eastern side of the discovery shaft sunk on said lead from said shaft and one thousand feet on the western side of the discovery shaft from said shaft, said mine and quartz lode or lead, being situate and lying within the limits of the grant and tract of land formerly known and called the Beaubien and Miranda Grant, and now better known and called by the name of the Maxwell Land Grant, together with all the dips, spurs, angles and variations thereof, and with all the rights of water, timber and other privileges appertaining and belonging thereto;

·· Also, the leasehold estate of the party of the first part in and to the undivided seven-twelfths (7-12s) of said mine and tract of land which the said party of the first part holds and owns by virtue of an assignment of that certain deed or lease made and executed by The Maxwell Land Grant Company, on the 16th day of July, A. D. 1884, to and in favor of Valentine S. Shelby for the period of thirty-five years from said 16th day of July, 1884. Together with the reversion and reversions, remainder and remainders, rents, issues and profits of all and singular the said premises and every part and parcel thereof, with the appurtenances.

To have and to hold unto the said party of the second part his heirs and assigns forever; In trust nevertheless, to the intent and purpose following, to-wit:—

Whereas, the said Clinton Butterfield has made, executed and delivered his three (3) certain promissory notes, bearing even date herewith, payable to Valentine S. Shelby, James Lynch, and Thomas B. Catron, or order, for the sum of one hundred and thirty-five thousand dollars ($135,000.00) the first of said notes being for the principal sum of fifteen thousand dollars ($15,000) and payable on or before January 15, 1894, the second of the notes being for the principal sum of fifty thousand dollars ($50,000.00) payable on or before July 1, 1894, and the last of said notes being for the principal sum of

Stearns-Roger  Co. v. Aztec  Co.

seventy thousand dollars ($70,000.00) payable on or be-
fore' January 1, 1895, with interest thereon in the man-
ner following to-wit: on said first note for fifteen thous-
and dollars ($15,000.00) from July 1, 1893, until paid
at the rate of 12% per annum, on said note for fifty thous-
and dollars ($50,000.00) from date until January 1st,
1894, at six per cent. (6%) per annum, and after Janu-
ary 1st, 1894, at twelve per cent. (12%) per annum, and
on said note for seventy thousand dollars ($70,000.00) at
the rate of six per cent, (6%) per annum from date until
July 1st, 1894, and on twenty thousand dollars ($20,000,-
00) thereof at the rate of twelve per cent. (12%) per an-
num from January 1, 1894, and with interest upon all of
said notes after maturity at 12% per annum  principal
and interest payable at the office of The Aztec Gold Min-
and Milling Company, Denver, Colorado.

And the party of the first part, for himself, his heirs
and assigns, agrees that he or they will, on or before the
25 day of each and every month, commencing with the
month of September, 1893, deposit in the Colorado Nation-
al Bank, Denver, the amount of the net earnings of said
mine for the then preceding month, such net earnings to in-
clude all earnings over and above the cost of development,
maintenance, operation and all necessary improvements
placed upon said property from and after the date when the
party of the first part, the heirs and assigns, shall take poss-
ession thereof and it being agreed that such improvements
shall remain upon and shall become part and parcel of said
premises, the amount of such earnings, when and as received
by said bank shall be credited and applied upon said note for
fifteen thousand dollars ($15,000.00) in reduction thereof,
and in order to enable said bank to make such application
said note for fifteen thousand dollars ($15,000.00) shall
be deposited in said bank and shall be held by it until
the amount of said net earnings shall be sufficient to can-
cel and discharge said note, whereupon it shall be deliver-
ed up to the said party of the first part, his heirs and as-
signs.

Provided, however, that if the amount of such net
earnings shall not have been sufficient to cancel such

note on or before the 15th day of March, 1894, it shall then be delivered up to the said Shelby, Lynch· and Catron, their heirs and assigns.

Now, therefore, if the said party of the first part shall well and truly pay said notes when the same shall become due and payable according to their tenor and effect, with interest as aforesaid, then this indenture shall become void and of no effect, but in case default be made in the payments, of the said notes, or either of them or the interest thereon or any part of such principal or interest, then the party of the second part may at any time thereafter, take possession of said property and the improvements which may then be thereon, give notice by advertisement published once each week for four successive weeks in one weekly newspaper then published in said county of Colfax, and one weekly newspaper published in the city of Denver, Colorado, that he will sell the premises, property and improvements therein conveyed by public outcry, at a day and hour to be by him fixed, at the front door of the building at that time used as a court house in said county of Colfax, and Territory of New Mexico, for cash, to the highest and best bidder, and thereupon shall proceed to sell the same according to the terms of such notice; and shall make, execute, acknowledge and deliver to the purchaser at such sale a good and sufficient deed in fee simple, absolute, conveying the hereinbefore described premises, without liability, upon such purchaser for the subsequent disposition of the proceeds of such sale, provided, nevertheless, that no sale of said premises shall be made by reason of such default in the payment of said notes or either of them or the interest thereon, until ninety (90) days after such default have occurred; and out of the proceeds of such sale, the said trustee shall pay, First: the costs incident to such notices, sale and conveyance, together with a reasonable attorney's fees. Second: The amount of said notes and interest remaining unpaid or so much thereof, as such proceeds shall amount to, and the balance, if any, he shall pay to the party of the first part, his heirs and assigns.

In case of default in the payment of any one or more

of said notes or the interest thereon when the same shall become due and payable according to the terms thereof and such default shall continue for the period of ninety (90) days from and after the date when such notes shall become due and payable according to the terms thereof then the whole of said notes shall become immediately, thereupon, due and payable.

In witness whereof the said party of the first part has hereunto set his hand and seal.

CLINTON BUTTERFIELD.    (Seal.)

On September 4th, 1894, the Maxwell Land Grant Company entered into a contract of sale with the Aztec Gold Mining Company to sell said Company its seven-twelfths interest in the Aztec Lode and other property adjoining and surrounding same, containing in all about 320 acres of land, reserving some property included in the boundaries, but including the Aztec Mine, and, as we understand it, the mill site and all other property involved in this suit. In March 1894, the Aztec Company having acquired the Butterfield interests to the Aztec Lode or mine, contracted with the Stearns-Roger Company for certain tramway material, stamp mill material, and mill extras and stock material, amounting in all to $17,332.96, of this sum all was paid except a balance of $5,000.00 and on Dec. 8, 1894, the Stearns-Roger Company filed a verified statement for a lien, and on said date filed a duly verified statement for a further Mechanics Lien of $810.41 as a balance due it for further machinery sold and furnished over and above that enumerated in the written contract of March 1894. On June 14th, 1894, The Aztec Gold Mining and Milling Company, entered into a contract with one Smith McKay, as follows:

"This agreement made and entered into this 14th day of June, A. D. 1894, by and between Smith McKay, of the city of Denver, state of Colorado, party of the first part, and The Aztec Gold Mining and Milling Co., a corporation organized and existing under and by virtue of the laws of the State of Colorado, party of the second part;

Witnesseth: Said party of the first part hereby agrees;

First, to furnish all tools, labor, and to pay all expenses of every character for such labor, for the erection complete of a certain 40 stamp mill on site to be selected by the party of the second part, which said mill is more fully described in a certain contract between the said party of the second part and The Stearns-Roger Mfg. Co., and by a certain set of drawings furnished by the Stearns-Roger Mfg. Co., all the machinery, with pipings, settings, whether of timber or of masonry, and the placing of all bolts, and in short, the complete erection of all the machinery  comprising the said mill from the grizzly through to the copper tables.

To start up and run said machinery complete for a term of not less than ten (10) days, and to turn over same to the satisfaction of said party of the second part, or its representatives, subject, however to the proviso hereinafter contained.

And said party of the first part hereby guarantees that should any part of the work be wrong or incomplete, that he will at his expense, make same good.

Second.  To supervise the construction of the mill building as per plans furnished by The Stearns-Roger Mfg. Co., or such modification of such plans as may be agreed upon by the parties hereto.

In consideration of which the said party of the second part hereby agrees to furnish to said party of the first part, all materials of every character whatsoever, for the construction of the mill building, the machinery and the material for the setting thereof as above specified, to be delivered on the site of the mill, to said party of the first part.

And pay unto said party of the first part the sum of three thousand dollars ($3,000.00) as follows, to-wit:

One third (1-3) on the completion of the boilers set in place, and of the engine foundation, and of the stamp battery foundation; one-third (1-3) on completion of the stamp battery frame with stamp mill set in place, and of the pulleys, boxes and line shaft; balance on the satisfactory completion and turning over of the entire work in first class running order.

In witness whereof, said parties have hereunto attached their hands and seals the day and year first above written.

SMITH McKAY    (Seal.)

THE AZTEC MINING & MILLING Co.    (Seal.)

By SHERMAN G. SACKETT, Supt."

On Dec. 11th, 1894, McKay filed a duly verified statement and claimor of lien for a balance of $575.00 claimed to be due him on his contract.   These Mechanics Liens are all claimed on the mill site where said mill was situated and also on the Aztec Lode or mine, and it is alleged that they were all filed within ninety days from the completion of the contracts or furnishing of the materials as above set forth.   This suit was brought to foreclose the Mechanics Liens, thus claimed, and the Aztec Gold Mining and Milling Company, The Maxwell Land Grant Company, James Lynch, Receiver, Henry F. Moore, Trustee, Valentine S. Shelby, James Lynch and Thomas B. Catron are made defendants.   The case was referred to a master who found for the Lien claimants, and his findings of fact and conclusions of law were in the main confirmed, and a decree entered in favor of the appellees sustaining their liens and adjudging them first and prior to the lien of the trust deed from Butterfield to Moore, and from the decree of the District Court of Colfax County, Appellants, The Maxwell Land Grant Company, Thomas B. Catron and Mary Lynch, Admx. of the estate of James Lynch, deceased. bring the case here for review on appeal.

OPINION OF THE COURT.

MANN, J.—Counsel in this case have filed very able and exhaustive briefs, discussing and presenting every phase and feature of the Mechanics Lien Laws, and indeed nearly every possible question arising under that branch of the law has been raised by the record in this case, making it necessary for the court to examine at some length our Mechanics Lien Laws in order to answer the following main questions presented:

1st.   Did the Stearns-Roger Company acquire a Mechanics Lien for the materials furnished the Aztec Mining and Milling Company and did McKay acquire such

lien for the labor furnished and performed by him for such company?

2nd. If such liens were acquired, what property was subjected thereto?

3rd. Were such liens, if acquired, superior to the Trust Deed from Butterfield to Moore, Trustee, for the benefit of Shelby, Catron and Lynch?

4th. Was the interest of the Maxwell Land Grant Company, subject to such liens?

While the case may be disposed of before all of these questions are disposed of, yet they are all fairly raised and argued by counsel in the briefs that we feel they are entitled to the full consideration of the court, especially as they are of vital interest to a complete understanding of the Mechanics Lien Law of the Territory.

Taking them up then, the first question referred to, it is contended by counsel for appellants that the contract having been made in Colorado, and as they contend performed there by delivery of the materials F. O. B. at Pueblo, in Colorado, it, thereupon became the property of the Aztec Gold Mining and Milling Company, in Colorado, and was placed in the mill and tramway as the property of the Aztec Company, and that therefore no lien attaches, the sale and delivery being complete and the property being vested in the Aztec Company, before it entered the Territory where the lien must attach, if at all

Sec. 2217, C. L., provides that "every person performing labor upon, or furnishing materials to be used in the construction, alteration or repair of any mining claim, building, wharf, bridge, ditch, flume, tunnel, fence, machinery, railroad, wagon-road or aqueduct to create hydraulic power or any other structure, or who performs labor in any mining claim, has a lien upon the same for the work or labor done or materials furnished by each respectively, whether done or furnished at the instance of the owner of the building or other improvement, or his agent, and every contractor, sub-contractor, architect, builder, or other person having charge of any mining, or of the construction, alteration or repair, either in whole or in part, of any building or other improvement, as aforesaid,

shall be held to be the agent of the owner for the purpose of this Act."

This court passed upon the very question presented upon the furnishing and delivery of materials, outside the Territory, in Genest v. Las Vegas Build'g Ass'n, 11 N. M. 251. In that case Mr. Justice Crumpacker delivering the opinion of the court says: (Pp. 269-70).

"It is fifthly contended by counsellor for appellants that as the contract between the Newton Lumber Company and the Contractor Kean, was made out of the Territory, and the materials used in the construction of the building were delivered by it to the contractor F. O. B., cars at Pueblo, no lien in the company's favor can arise under the New Mexico statute. We are of the opinion that under the circumstances presented by the record in this case, the rights of the sub-contractor to enforce the lien claimed are not destroyed or impaired by the fact that by said contract the Newton Lumber Company agreed to and did sell and deliver the goods in another state. It appears from the complaint, the copy of notice of lien therein set forth, and the proofs that the Newton Lumber Company agreed to furnish the materials for use in the construction of the building", and that it "agreed to perform certain labor to and for the Contractor Kean and for use in the construction and completion of said Masonic Temple", and that it "did so furnish the material, perform certain work in Las Vegas on the building, put up the stairs, set the front and finished the Montezuma Club" .......... It is the furnishing of materials to be used in the construction and the putting them into the building which entitles the sub-contractor to the lien upon the premises to the extent of the value of that material. The case cited by counsel for Appellants of Birmingham Iron Foundary v. Glencon Starch Mfg. Co., 78 N. Y. 30, is under a statute much more restrictive in its terms than ours ............. and these cases are therefore not a guide to correct judgment in the present case. The statute of New Mexico is general and does not restrict the right of lien to cases where materials are sold and delivered in this Territory, and we conclude that the contention of counsel for appellants in this

regard is not tenable.    Mallory et al. v. Abbatoir Co.
(Wis.) 49 N. W. 1071; Campbell v. Coon, (N. Y.) 44 N.
E. 300; Gatey v. Casey, et al., 15 Ill. 189."

We have quoted extensively from this case for the
reason that it discusses and decides the very point raised
by counsel and seems to us sound in principle and fully
sustained by authority.   27 Cyc. 45, citing Great Western
Mfg. Co. v. Hunter, 15 Neb. 32; Parker Land etc. Co. v.
Reddick, 18 Ind. App. 616; Badger Lumber Co. v. Mayes,
38 Neb. 822; Mallory v. La Crosse Abbatoir Co., 80 Wis.
170; Atkins v. Little, 17 Minn. 342.

But counsel contend that the contract between the
Aztec Company and the Stearns-Roger Company does not
show specifically that the materials were to be used in the
construction of the identical stamp mill and tramway in
question, the same not being described or mentioned in the
written contract set out in the claim of lien and in the com-
plaint, and that therefore it cannot be shown by parole that
such materials were to be used.

We think, however, that as a written contract is whol-
ly unnecessary to entitle appellees to its liens, under
the statutes of the Territory, it may show by parole
testimony which neither disputes nor alters the terms of the
writing, that such material was furnished for use in the
construction of the improvement of the property, on which
the lien is claimed.   The written contract not being the
basis of the action, it may be shown by any competent
proof, the contract need not describe the land unless the
statute requires it.   27 Cyc. Law & Pro. 69,  citing Mon-
tadon v. Deas, 14 Ala. 33, 48 Am. Dec. 84; Yancy v. Mor-
ton, 94 Calif. 558, 29 Pac. 1111; San Diego Lumber Co.
v. Woolredge, 90 Cal. 574, 27 Pac. 431; See also Mountain
Electric Co. v. Miles, 9 N. M. 512.

The bill and notice of lien state specifically that
the materials were furnished for the identical mill and
tramway in controversy, and this is sustained by the oral
evidence of the witness Stearns (P. 51 Record), and other
witnesses, including the correspondence between the part-
ies and there seems to be no doubt from the evidence that
the materials were duly received by the Aztec Company

and placed in the mill and tramway. The notices of lien of the Stearns-Roger Company were filed within the time required by law, as found by the Trial Court, and we see nothing in the record that would justify a reversal of that finding.

As to the McKay lien, the contention of counsel is, that part of the services were for superintendence and part for labor, and that he cannot acquire a lien for superintendence, and further, that as his notice of lien does not disclose what portion was for actual labor performed and what part was for superintendence, therefore he cannot maintain his lien, and in support of their contention counsel cite the case of Boyle v. Mountain Key Mining Co., 9 N. M. 237.

We think, however, that the distinction between the nature of the employment between Boyle in that case and McKay in the case at bar is clearly distinguishable and that the right of the latter to a lien for his services is clear. In the case of Mining Co. v. Cullins, 104 U. S., 176, cited with approval by this court, in the Boyle case, Mr. Justice Woods uses the following language, which is applicable to this case:

"The finding of the District Court makes clear the character of the services rendered by the defendant in error. He was not the general agent of the mining business of the plaintiff in error. That office was filed by Patrick. He was not a contractor. His services were not of a professional character such as those of a mining engineer. He was the overseer and foreman of a body of miners who performed manual labor on the mine. He planned and personally superintended and directed the work, with a view to develop the mine and make it a successful venture. His duties were similar to those of a foreman of a gang of track hands upon a railroad, or of a force of mechanics engaged in building a house."

In the Boyle case, the lien claimant was the general superintendent of the mining company on a salary of $3000 per year, and had general oversight of the company's business, its mine, mill, boarding house, etc., and was in fact a salaried general agent of the company, not

charged with a special oversight of the improvement of the
property itself as the foreman of certain development work
while under this contract McKay was charged by his con-
tract with the erection of this mill by a certain set of draw-
ings furnished him by the Aztec company, thus showing
that he was engaged in the personal oversight of building
the mill according to plans and specifications furnished
him.   The difference in the two cases is obvious, and we
think there can be no question but McKay was and is en-
titled to a lien for the services performed by him.

2nd.   Having decided that the Stearns-Roger Com-
pany and McKay were each entitled to Mechanics Liens
under the Statute of the Territory, the next question
which naturally arises, is, to what property do such liens
attach?

It will be observed that the stamp mill which McKay
built for the Aztec Company and the materials for which,
in the way of machinery, were furnished by the Stearns-
Roger Company, was located about one thousand feet
from the mouth of the tunnel or working shaft of the
Aztec mine.   It is described in the latter's claim for lien
as being "situated at a point 1350 feet S., 53° 30' west
from the southeast corner No. 1 of the Aztec Mining Claim
or lode", and as that lode ran 3000 feet in an easterly and
westerly direction the mill was not located between the side
lines of the lode claim, if indeed there were any well estab-
lished surface lines.   There was however a tramway from
the mouth of the tunnel or workings on the Aztec mine
from which the ores were taken to the mill, and as the
materials for this tramway were furnished by the Stearns-
Roger Company, and as both the Stearns-Roger Co., and
McKay claim that the Aztec mine is "required for the con-
venient use and occupation" of the mill they claim that
their liens attach to the mine as well as to the mill site. The
master to whom the case was submitted found as one of
his findings of fact as follows:

"Eighteenth.   That said forty stamp mill, mill build-
ings, tramway, tracks and all other of said buildings, erec-
tions and improvements, were made, constructed, and erec-
ted under one general design and plan, and all to be used

solely for the purpose of altering, constructing and repair-
ing said mining claim and for working and developing the
same, and extracting the ores from said Aztec mine and
for transporting the same to said mill, and for treating
such ores and extracting the gold therefrom, in and by said
forty stamp mill, and that said mine and mill are of very
little value or practical utility separate and apart from each
other, and that therefore said Aztec lode or mining claim
and said mill site or tract of land adjacent to
said Aztec lode, and on which said mill is lo-
cated, together with said mill, mill building, tramway,
track, and other improvements constitute and are "one
mining claim", and that all of the said Aztec lode or min-
ing claim, and all of said mill site or tract of land adjacent
thereto, on which said mill or other erections and tramway
are located, are necessary for the convenient use, occupa-
tion, operation and enjoyment of said mining claim or
Aztec lode, and also are necessary for the convenient use,
occupation and operation of said tramway and forty stamp
mill."

The amount of land upon which the building, im-
provement or structure is constructed, and which is to be
included in the lien, is to be "so much as may be required
for the convenient use and occupation thereof, to be de-
terminated by the court on rendering judgment." Sec. 2219,
C. L. 1897.

Under the pleadings and proofs in this case it appears
quite clearly that the fee to all this land, including the
mill site and Aztec mine or lode, was in either the Maxwell
Land Grant Company or the Aztec Gold Mining and Mill-
ing company, and that that portion to which the former
company held the fee the latter company held and occupied
under lease or contract at the time the improvements were
made. It was perfectly competent for the Trial Court
to determine the amount of land to which the liens shall
attach in rendering judgment, and it did do so by adopt-
ing and confirming the master's report. As is said in
Springer Land Association v. Ford, 168 U. S. 513, (at p.
530):

"The truth is that what area of land is subject to

lien in a given case depends upon the character of the improvement."

The Supreme Court of the United States was then construing the very statute here under consideration, and it held that the lien for building and constructing the ditch system there involved covered the entire amount of lands irrigated by the system, saying of the land and ditches: "Each was dependent upon the other, and both were bound together in the accomplishment of a common purpose", viz: The irrigation of the lands susceptible of irrigation from the system of ditches which were the improvements on which the lien claimants there contended for a lien.

In the case at bar the findings of the master, which were adopted and confirmed by the court, are to the same effect, and we cannot say that from the pleadings and record before us such finding was not justified.

If the record showed that these properties, the millsite and the mine, were in every sense separate and distinct and owned by different parties as appellant's counsel contend in their brief, we might be confronted by a very different question, but it seems certain that the mine and mill were operated by the same company and for the sole purpose of treating the ores taken from the Aztec mine, and there is at least no evidence that it was a custom mill or used for any other purpose than the treatment of its own ores, taken from this one certain mine.

3rd. The next question is a far more serious one, that is, whether or not the Mechanics Liens of the Stearns-Roger Company and McKay are superior to and take precedence over the Trust Deed from Butterfield to Moore, for the benefit of Shelby, Lynch and Catron.

Sec. 2220 C. L., reads as follows: "The liens provided for in this act are preferred to any lien, mortgage or other incumbrance which may have attached subsequent to the time when the building, improvement or stucture was commenced, work done, or materials were commenced to be furnished; also to any lien, mortgage, or other incumbrance of which the lien holder had no notice, and which was unrecorded at the time the building, im-

provement or structure was commenced, work done; or the materials were commenced to be furnished."

Sec. 2226, reads: "Every building or other improvement mentioned in section two thousand two hundred and seventeen, constructed upon any lands with the knowledge of the owner or the person having or claiming any interest therein, shall be held to have been constructed at the instance of such owner or person having or claiming any interest therein, and the interest owned or claimed shall be subject to any lien filed in accordance with the provisions of this act unless such owner or persons having or claiming an interest therein shall within three days after he shall have obtained knowledge of the construction, alteration or repair, or the intended construction, alteration or repair, give notice that he will not be responsible for the same, by posting a notice in writing to the effect, in some conspicuous place upon said land, or upon the building or other improvement situated thereon."

These sections of the Mechanics Lien Law of the Territory are both parts of the same Act, the former appearing as Sec. 4 and the latter as section 10, of the laws of 1880, when the present Mechanics Lien statutes were enacted, and were therefore passed by the same Lgislature and at the same time.

It is the contention of Appellees, that Sec. 2226 makes it obligatory upon the mortgagee of a prior recorded mortgage, in order to maintain the priority of his lien, to give the notice therein provided, and that a failure to do so, within the three days, as prescribed in that section, a subsequently accrued Mechanics Lien takes precedence over the mortgage. They contend that the term "having or claiming any interest" in the land upon which the improvement is erected, is broad enough and was intended to cover the lien of a mortgagee upon the property.

But we cannot concur in this contention, nor do we think the Mechanics Lien Law of 1880, is susceptible of such a construction. The fact that Sec. 2220 (Sec. 4 of the Act in question) explicitly made the liens provided for in the act preferred "to any lien, mortgage or other incumbrance which may have attached subsequent to the time

when the building, improvement or structure was commenced, work done or materials commenced to be furnished: Also to any lien, mortgage or other incumbrance of which the lien holder had no notice, and which was unrecorded at the time", just as effectually prefers the liens and encumbrances not coming within the class enumerated as though so enacted in express terms, under, a well settled rule of statutory construction. Southerland on Stat. Con. Sec. 326-7-8.

We think the legislature clearly intended to and did make. a distinction between mortgagees, lien-holders and those having an encumbrance, duly recorded and accrued prior to the accruing of the Mechanics Lien, and those having or claiming any interest in the lands upon which the lien is claimed.

This court in Cleland v. Alexander, 86 Pac. 425; speaking through Chief Justice Mills, makes use of the following language: "However created, a lien (and a mortgage is a lien) *is not an interest in land,* but merely a security for the payment of a debt." Citing numerous authorities in support of that statement, and while the court did not then have this statute under consideration, yet the principle is the same and is sustained by the great weight of authority in the United States, and may be said to be the modern doctrine and generally accepted as the true one in this country. 27 Cyc. 961 and authorities cited. 1 Jones on Mortgages (2 Ed.) Sec. 58.

This has always been the doctrine held to by the courts of equity and "the equitable view has largely encroached upon and sometimes quite superseded, the legal, even in courts of law." 1 Jones on Mtgs. Sec. 8.

The mortgagee has no interest in the land described in his mortgage until default in the terms of the mortgage. He cannot take the possession, nor interfere in its management or control, unless his security may be diminished. A transfer of the indebtedness, as the endorsement and delivery of the note secured, carries with it the mortgage, which is only an incident to the debt, and unless the mortgage carries with it a power of sale, he must

foreclose by a suit in equity before he can apply the proceeds to the payment of his debt when due.

The legislature evidently had in mind the difference between the mortgagee or other lien holder and those having or claiming an interest when the two sections (2220 and 2226) were both included in the act.

The first was evidently intended to secure a preference to prior recorded mortgages and liens and to give the benefit of the statutes against unrecorded mortgages and liens, of which the lien claimant had no knowledge, while the latter section (2226) referred to lessees, vendees under contract of sale and like persons who claim the fee or some estate or interest in the land itself.

The trust deed from Butterfield to Moore was in effect a mortgage.

"A deed of trust to real estate executed for the purpose of securing a debt conditioned to be void upon payment of the debt, and containing a power of sale upon default, is essentially a mortgage, and does not differ in its legal operation and effect from an ordinary mortgage with power of sale. Like a mortgage such a deed is a mere security for a debt, or for the performance of certain undertaking by the grantor. It is a mere incident to the debt which it secures, upon which it depends, and which it follows and will pass with an assignment of the debt to the holder." 27 Cyc. 967; citing numerous authorities, including Arkansas, California, Connecticut, District of Columbia, Georgia, Idaho, Illinois, Massachusetts, Nebraska, North Carolina, Oregon, Pennsylvania, Texas, Utah and Wisconsin. Shillaber v. Robinson, 97 U. S. 68; 2 Jones on Mortgages, Sec. 1769.

It is contended that this Trust Deed is a grant coupled with an interest and is not in the nature of a mortgage, but a scrutiny of the instrument, which is set out in the statement of facts, must convince one of its nature.

There appears on its face no other intention of the parties, than that of security for the debt named therein, and the court will always look at the substance rather than the form.

The legislature in thus securing to the bona fide mort-

gagee who had complied with the recording acts, a pref-
erence over the person performing labor or furnishing ma-
terials for improvements on the land, acted justly and in
accordance with equity and common sense.   The laborer
or material man has notice of the prior lien, or may have
by searching the records, before his labor is performed or
his material furnished, and it is only just that he use
the ordinary caution or ascertaining as to prior liens before-
hand, while on the other hand if the mortgagee has filed
his mortgage for record and thus given notice of it to the
world, it would be absurd to compel him to watch his se-
curity lest some laborer or material man enter the prem-
ises and "improve" him out of it.   Indeed to compel a
mortgagee living more than a three day's journey from
his security to post a notice thereon within three days
of his obtaining knowledge of such improvement, would
be very near to confiscation of it.

4th.   The Maxwell Land Grant Company, in its an-
swer, admits its interest in the property upon which the
Mechanics Liens of the Stearns-Roger Company and Mc-
Kay are sought to be enforced, but denies any knowledge
of the improvements being made, so that the only ques-
tion as to whether or not its interests are subject to these
liens is the question of notice.

The evidence offered by appellees on this point is to
the effect that Mr. M. P. Pels, the General Manager
of the Maxwell Land Grant Company, knew of the
improvements at the time they were being construct-
ed and so informed Mr. Stearns, and that said Pels
told him personally that he knew of no notice being posted.
There also appears in the record a contract between the
Aztec Company, and the Maxwell Land Grant Company,
which is signed by Mr. Pels as General Manager on be-
half of the last named Company.   Nowhere in the record
is there any denial by the Maxwell Company of the fact
that Pels was its General Manager during that time.

"The general rule is that notice of a fact acquired
by an agent while transacting the business of his prin-
cipal, operates constructively as notice to his principal.   As
corporations from their nature can never act except through

the instrumentality of their agents and can never be acted upon except through the instrumentality of their agents or their property, this principle applies with peculiar force to them." 10 Cyc. 1053, and cases cited.

The General Manager of a corporation is defined in Vol. 4, Words and Phrases Judicially Defined, p. 3073, as "The person who really has the most general control over the affairs of a corporation, and who has knowledge of all its business and property, and who can act in emergencies on his own responsibility, and who may be considered the principal officer." Citing Robert Lee Silver Min. Co. v. Omaha & G. S. Co., 16 Colo. 118; 26 Pac. 326-7; Kansas City v. Cullinan, 65 Kan. 68; 68 Pac. 1099-1102.

We think in the absence of any evidence tending to dispute Pels' authority as General Manager and of his knowledge of the improvements being made and the materials furnished as shown by appellees, the trial court was justified in finding that the Maxwell Land Grant Company had due notice, and as it is not claimed that it posted any notice under Sec. 2226, C. L., it follows that its interests in the property are subject to the liens of the appellees.

Numerous questions are discussed in the briefs of counsel, such as the reasonableness of the amount of attorney's fees by the Trial Court which we have not commented upon, but suffice it to say that with the exception of the questions of priority of the liens created by the Deed of Trust from Butterfield to Moore and the Mechanics Liens of the appellees, we think the Trial Court was fully justified in its findings of fact and conclusions of law as finally adopted and that there is no error in its decree, except in that respect.

For the reasons given the decree of the Trial Court is reversed and a decree will be rendered in this Court in accordance with the views expressed herein, and it is so ordered.

## CONCURRING OPINION OF ASSOCIATE JUSTICE POPE.

POPE, J. (Concurring.)—The opinion of the court

contains an announcement of the doctrine that under the laws of this Territory a mortgage passes no legal estate but is a mere lien.   While assenting fully to this conclusion, the practical importance of this question, which has been a much mooted one in this Territory for many years, leads me to record my reasons for concurring in this decision of the court and in so doing to trace briefly the history of the doctrine thus adopted as the rule in our own jurisdiction. At common law the rule was undoubted that a mortgage vested the title to real estate in the mortgagee with the accompanying right of possession, and as between mortgagor and the mortgagee the latter was the legal owner.   Brobst v. Brock, 10 Wall. 59; Cotton v. Carlisle (Ala.) 7 A. S. R. 31. This doctrine has been superseded in many jurisdictions by statute, in others without statute, and even in those jurisdictions which have retained the common law rule it has been limited so that the mortgagee's interest is treated as real estate only so far as is necessary for his protection and to give him the full benefit of his security.   Hutchins v. King, 1 Wall. 53-60; Waterman v. McKenzie, 138 U. S. 259; Lightcap v. Broadley, 186 Ill. 510; and it has been held that a sale or conveyance of the estate is not one of the purposes for which the mortgagee's interest is to be so treated.   Bell v. Morse, 6 N. H. 205.   The tendency of the decisions is shown by Carpenter v. Logan, 16 Wall. 275, where it is held that "the debt is the principal thing and the mortgage an accessory", and by Waterman v. McKenzie, *supra,* where it is said that mortgages of real estate have "come to be more and more considered as a mere security for the debt, leaving the title in the mortgagor."   The New York Courts at an early date led in a departure from the common law rule, and their influence is shown in the fact that practically all of the States west of the Mississippi now hold that a mortgage is a mere lien, passing no title.   The views of the various state courts are fully set out in 1 Jones on Mortgages (6th Edition) Secs. 13 to 59, where it is said after reviewing the several state doctrines (Sec. 59) : "Grouping the states geographically, it will be noticed that the English doctrine of the nature of mortgages, with slight modifications, prevail east of the

Mississippi in a large majority of the states, while west of the Mississippi, except only in the states of Missouri and Arkansas, the doctrine everywhere prevails that a mortgage passes no legal estate or right of possession." This condition of things is ascribed by the same learned author (Sec. 59) not so much to statute as to the influence of the early New York cases and the civil law; and in California, whose Supreme Court, speaking through Mr. Justice Fields, has been most potent in implanting the New York doctrine west of the Mississippi, the courts in addition to holding that "a mortgage is mere security for the debt and vest no title either before or after condition broken," (Mc-Millan v. Richards, 9 Cal. 410; Nagle v. Macy, 9 Cal. 426) indicate that such holding is not the result of statute but is equally applicable upon sound principle to mortgages executed prior to the California statute. Dutton y. Warschauer, 21 Cal. 623; Mack v. Witzear, 39 Cal. 255. It is undoubtedly true, however, that the divergence from the common law not only in New York but in the Western jurisdictions has been largely the result of statutes, some of them declaring that the right of possession shall continue in the mortgagor and others declaring in terms that a mortgage shall be construed as a mere lien. McMillan v. Richards, 9 Cal. 410 and Fogarty v. Sawyer, 17 Cal. 592, indicate the influence of the New York and California statutes on the subject. The Oregon statute is discussed in Teal v. Walker, 111 U. S. 250, and is held to "cut up by the roots" the common law doctrine and to "give effect to the view of the American Courts of equity that a mortgage is a mere security for a debt." The same statute is considered in Savings Society v. Multnomah Co., 169 U. S. 426. Among the cases developing the doctrine, mostly as to the result of statutory provisions, are Chick v. Willets, 2 Kan. 384; Caruthers v. Humphrey, 12 Mich. 270; Humphrey v. Hurd, 29 Mich. 44; Hoffman v. Harrington, 33 Mich. 392; Gallatin v. Beatty, 3 Mont. 173; Balduff v. Griswold (Oklahoma), 60 Pac. 223; Stevens v. South Ogden Company (Utah), 58 Pac. 843; State y. Supr. Court (Washington) 58 Pac. 1065; Wood v. Trask (Wis.), 76 A. D. 230; Wright v. Henderson, 12 Tex. 43; Drake v.

Root, 2 Colo. 685; and cases cited in 1 Jones on Mortgages, Secs. 13-59. While the precise question has never been expressly decided by this court it is held in Territory v. Co-operation Bldg. & Loan Association, 10 N. M. 337, that real estate mortgages are personal property, and this court in speaking in this case, through Mr. Justice McFie, uses expressions which indicate the views. of the court to be that a mortgage is primarily a security. There are expressions to the same effect in Alexander v. Cleland, 86 Pac. 425, cited *supra* in the opinion of the court. Considering the question, however, as an open one up to the present time and recognizing the common law rule as prevailing in this Territory unless altered by statute, I am of the opinion that the legislature by C. L. Sec. 2365 has changed the common law rule and that the reason of all the cases above cited from Western jurisdiction applies to this Territory. At common law, as we have seen, the making of the mortgage conferred the right to immediate possession upon the mortgagee as in the case of any other grantee. But our legislature has provided by C. L. 2365 that in the absence of stipulation to the contrary "the mortgagor of real  x · x  x  property shall have the right of possession thereof." This, by withholding from the mortgagee the right of possession until foreclosure, sale and purchase "cuts up by the roots the common law doctrine" (Teal v. Walker, *supra*) and "deprives the mortgagee of the only material advantage which remained to him from being considered the owner of the fee." (Chief Justice Emmett in Adams v. Corriston, 7 Minn. 456). This statutory provision in my judgment changes the common law rule and places the law in this Territory upon the same basis as in California and the other Western jurisdictions.

This is the view evidently taken by the learned author of Jones on Mortgages, for at Sec. 43 he quotes our C. L. Sec. 2365 and at Sections 58 and 59 names New Mexico expressly as being among the jurisdictions in which the mortgage "passes no title or estate  x · x  x  x  to the mortgagee, and gives him no right of possession before foreclosure." It is not a cause for regret that this statutory provision makes it possible to declare the law in New

Mexico to be thus in accord with common sense, as opposed to a common law fiction. In popular opinion a mortgage is universally regarded as a lien. Men buy and sell mortgaged realty and always consider that they are purchasing not a mere equity of redemption but the property itself, subject only to the obligation to pay off the *lien* of the mortgage. The nearer law can be brought to the basis of common sense and every day comprehension the nearer it will be a rule of conduct lived up to in public and private life, and the stand taken by the Western Courts on this subject have tended very strongly to this salutory result. As is well said by the Supreme Court of Kansas in Chick v. Willets, 2 Kas. 386; "In this state a clean sweep has been made by statute. The common law attributes of mortgages have been wholly set aside; the ancient theories have been demolished; and if we could consign to oblivion the terms and phrases—without meaning except in reference to those theories—with which our reflections are still embarrassed, the legal profession on the bench and at the bar would more readily understand and fully realize the new condition of things." For these reasons I concur in the doctrine announced by the opinion of the court on this subject.